JOSEPH H. DUNHAM AND OTHERS v. JOHN G. CHATHAM
AND WIFE.

The presumption in favor of the community resulting from a deed made to either husband or wife, may be rebutted by proof that the purchase was with the separate funds of either partner ; and when made to the wife, it may be shown to be for her benefit, not only from the advance by her of the purchase money, but if the funds be advanced from the separate means of the husband, the presumption of gift arises, and if from the community fund, it may be proven that the husband intended a gift and ordered the deed in her name.

Parol evidence is admissible to show, that a gift, though joint to husband and wife on the face of the deed, was intended and should operate only as a gift to the wife.

Where a woman receives property under a distribution as guardian of her children, and places such property on the inventory of her ward's estate ; in a claim by her to the property, this is at most only an equitable estoppel against her, available only where her conduct has been fraudulent in its purpose, or unjust in its results.

Error from Grimes. Tried below before the Hon. P. W. Gray.

The defendant in error, Rotilda Chatham, with her husband, brought suit in 1856, alleging that she was formerly the wife of John H. Dunham, who died in November, 1853, leaving a considerable amount of property in his own right, and had control also of some of the separate property of said Rotilda. That Jos. H. Dunham administered on the estate of deceased, and made out and returned an inventory of the same. That in February, 1855, she discovered that property, consisting of several negroes and land, her separate property derived by gift from her father, was placed on said inventory of the estate of Jno. H. Dunham as community property. That she

moved to have the same corrected before the Probate Court, which was there so ordered to be done.　That in the partition which was afterwards made, said property was ordered to be partitioned as community property between her and the minor children of decedent.　She further set forth the deed of gift from her father, with explanations how and for what purpose the same was made jointly to herself and to her husband John H. Dunham, deceased, alleging that the partition and the decree thereupon by the Probate Court was erroneous, and praying for a *certiorari*, &c.

The plaintiff in error, Dunham, answered, admitting that he did administer on the estate of John H. Dunham, and that in placing the negroes on the inventory as community property. he acted upon the import of the deed of gift from Jas. Wood, the father ; and in regard to the land, that he knew of no special claim on the part of defendant in error therein ; and that the application for partition was made by her authority, and that when made that she assented to and approved the same. The minors, by their guardian *ad litem*, set up the deed of gift, and that the defendants in error were estopped by her assent to the partition as made evidenced by various acts and declarations.

On the trial the defendants in error gave in evidence the record of the proceedings in the County Court in regard to the estate of John H. Dunham, and the deed of gift from Jas. Wood to John H. Dunham and wife, and in connection with the latter the deposition of Thomas Durham, who proved that he wrote the deed of gift, and that at the time it was executed, Wood, the donor, told him that he intended to give this property to his child, Rotilda.　John H. Dunham was present. It was the express intention of Wood that his child, Rotilda, should be the prime beneficiary of this gift, but that John H. Dunham might have the control of it as her husband.　The name of John H. Dunham was inserted in the deed at the suggestion of witness, to which Wood assented, that he might

show his confidence in him. Tillotson Wood, a witness to the deed, testified substantially the same as Durham, and in addition, that Wood, the father of Rotilda, paid five hundred dollars as part of the purchase money for the 346 acres of land mentioned as the homestead and divided as community property.

Plaintiff in error then introduced evidence to show that the defendant in error, Rotilda, had not expressed any dissatisfaction with the partition until about the time of her second marriage. They also proved by one of the appraisers of the estate of John H. Dunham, deceased, that the inventory was made at the house of deceased, and that the defendant in error and her father, James Wood, were present, and that he supposed they knew that this property was inventoried as community ; heard no objection made, but did not recollect that anything was said to defendant in error on the subject. One of the Commissioners appointed by the County Court to divide the estate of John H. Dunham, between his widow and minor children, proved that the division was made at the house of defendant in error, and that she was present and offered no objection. They also offered inventories filed by defendant in error in the County Court of Grimes county, as guardian of the minor children of John H. Dunham, upon which the negroes in controversy, except one apportioned to her, were entered.

They also offered the plaintiff in error, Dunham, as a witness, to prove circumstances attending the making of the inventory, and knowledge of the fact on the part of defendant Rotilda, that the negroes and land had been returned as community property, and that she assented to the same ; and also declarations of the donor, James Wood. He was objected to as incompetent, and the objection was sustained. From the bill of exceptions, it appears that the plaintiffs in error objected to the testimony of Durham and Tillotson Wood given above, which objection was overruled. There was a verdict

and judgment for the defendants in error for the negroes, and for $500 paid on the purchase of the homestead, &c.

Plaintiffs assign as error :

1st. The admission of the deposition of Thomas Durham.

2d. The admission of the testimony of Tillotson Wood.

3d. The refusal of the Court to permit Alfred Howell to testify as to the declarations of Jas. Wood at the time the inventory was being made.

4th. The refusal to allow Joseph H. Dunham, the co-defendant of the minors, to testify in their behalf.

5th. The refusal of a new trial.

*F. H. Merriman,* for plaintiffs in error. The judgment of said District Court should be reversed and a new trial granted, because—

I. The Court erred in admitting the deposition of Thomas Durham and the testimony of Tillotson Wood, under the defendants' objection, to show the intention of James Wood, the donor of the slaves, at the time he executed the bill of sale to John H. Dunham and wife. This instrument recites that in consideration of one dollar, he, James Wood, bargains and sells to said John H. Dunham and his wife Rotilda, among other things, four negroes, Linda, Caroline, Mahala and Salina, with a warranty as to title. This is an absolute bill of sale upon a valuable consideration, and parol testimony to show the conversation at the time of the execution of the same, and the intention of the donor at the time he executed the instrument, should not have been admitted.

This cannot be a case of patent ambiguity, and if there is any ambiguity at all in the instrument it must be latent, that is there must be words used in the same in some technical sense, or there is some doubt as to the identity of the persons claiming under the same, or as to the situation and circumstances of any person or subject matter to which the instru-

ment relates.   In such cases parol testimony, to explain the instrument, has sometimes been admitted.   But there is no such ambiguity claimed in this case, and the testimony should have been rejected.   (1 Greenleaf's Evidence, p. 405.)   " The question should be not what the party secretly and in fact intended, but what meaning did he intend to convey by the words he employed.   It is only to ascertain the meaning of these words that parol evidence of extraneous facts may in some cases be admitted."   (Epperson v. Young, 8 Tex. R. 136 ; 2 Tex. R. 454 ; Kimball v. Morrell, 4 Greenleaf's Rep. 368.) In Epperson v. Young, *supra*, Lipscomb, J., says : " That parol evidence could be received to explain the language or terms used in a written contract, so as to understand what the parties really meant, but never to permit it to be received for the purpose of varying or substituting another one to control or overrule the written contract.   With this conclusion we are fully satisfied."

Such testimony, introduced to show that property held under said bill of sale, by Dunham and wife in community, was in fact intended by the vendor to be held by Rotilda the wife, alone—in severalty—should have been rejected.   (Potter *et al.* v. Yale College, 8 Conn. R. 52 ; 18 Johnson, 468 ; 7 J. J. Marsh, 133 ; 3 Hammond, 33 ; 6 B. Monroe R. 219 ; 7 Id. 73.) In 2 Devereux Rep., (p. 508,) it was held, " that parol testimony was inadmissable to prove that the name of C was inserted in a bond by mistake, instead of the name of A."   In Paine v. McIntyre, (1 Mass. R. 69,) it was held, " that the subsequent confession of the party as to the true intent and construction of the title deed under which he claims, will be rejected." (Townsend v. Meld, 8 Mass. R. 146.)

There is in this case no allegation as to fraud in the application of the property, or a perversion of the same under the bill of sale, and it is not governed by those decisions which hold that a deed absolute on its face may, by parol proof, be shown to be a mortgage, on the ground of the fraudulent ap-

plication of the instrument.   In Stampers v. Johnson, (3 Tex.
R. 5,) the Court say, " that parol evidence will be admitted to
show or explain the real intention of the parties."   But the
question under consideration in that case was, whether parol
proof was admissable to show a deed, absolute on its face, was
intended to be a mortgage, and on examination of the authori-
ties cited in the opinion of the Court, it will be seen they all
relate to the same question, and we presume the Court in
Stampers v. Johnson intended to go no further than to hold
that in cases where fraud is alleged, the Court will admit parol
testimony to show the true intent of the parties.

II.   The Court erred in refusing to admit the testimony of
Joseph H. Dunham, the administrator in behalf of his co-de-
fendants, the children of John H. Dunham, deceased, as to how
the inventory was made, and as to the fact of the admissions
by Rotilda Chatham, the defendant in error, and her assent to
the division of the property as made by the County Court.
He had fully performed his duties as administrator, and was,
by an order of the County Court, in pursuance of the Statute,
" finally and fully discharged from his trust," at the April
Term of said Court, in the year 1855, one year and nearly one
half before filing the petition by defendants in error in the
District Court.   He asks, in his answer, that he may for these
reasons be dismissed with his costs, &c.

There is no evidence in the case in any way tending to
charge him, as such administrator, with having made himself
liable by the mal-administration or neglect of his duties as
such, and yet a judgment is entered against " defendants for
all costs incurred to this time, for which execution may issue."
In this case the Court should of its own motion, or on the
answer of the said Joseph H. Dunham, have dismissed him
from the case with a judgment for costs against the defendants
in error, and received his testimony in behalf of his co-defen-
dants.   In Johnson v. Davis, (7 Tex. R. 175,) Wheeler, J.,
delivering the opinion of the Court in the case, where the de-

murrer to the petition, objecting that improper parties, having no interest in the subject matter of the suit, were joined with him who demurred, and the demurrer was overruled by the Court below, says : "It would have been a better practice, more in common with justice, to have dismissed the suit as to those improperly joined, when the objection was made, and the misjoinder first brought to the notice of the Court. But, however, the Court should have decided on the demurrer ; at the trial, when it appeared that there was no evidence in any way affecting the defendants improperly joined, the Court proceeding to make a final decree and to do complete justice between all the parties, ought to have dismissed the case as to those improperly joined, at the costs of the plaintiff ; and this, although they had suffered judgment to go by default."

In the case before us Joseph H. Dunham had appeared, placing upon the record of the Court his answer, asking to be discharged or dismissed from the Court, and then, or when the plaintiff had rested and no evidence had been offered to charge the administrator, the Court erred in not discharging him, and receiving his testimony in behalf of his co-defendants the minors.

III. The Court below erred in refusing the motion for a new trial, for the reasons stated in said motion, and in the fifth assignment of errors, viz : on the grounds already herein stated in the first and second points, and third because there was no proof in the case that the defendant in error, Rotilda, was acting in ignorance of her rights, or was induced by any act or influence of the administrator to refrain from asserting her right to hold the negroes, or a certain part of the tract of 346 1-10 acres of land in severalty, and fourthly and fifthly for the reasons stated in the third ground of the motion for a new trial and in the third point herein, viz : as to the verdict ; and sixthly, because of the newly discovered testimony of Rebecca J. Wood. By her affidavit, it will appear that Rotilda Chatham, the defendant in error, admitted to said Rebecca J.

Wood, not only the facts which had already appeared in evidence that she, the said Rotilda, was present at the time the division was made by the Commissioners, and made no objection to the same ; and that before said division she had expressed full confidence in the administrator and his disposition to do justice to herself and children, but the additional fact, which no where is in evidence in the case, that subsequent to the said division of the Commissioners she " expressed her entire and unqualified satisfaction with the said division," and that she had declined having any steps taken in the County Court or Probate Court to secure to her individually that part of the property she claims in this suit, preferring that it should stand as divided, since it was for the benefit of her children.

This action on her part, done in consideration of the natural love and affection for her children, is in fact an equitable release or confirmation to them the said minors of the title vested in them by the act of the Commissioners and the orders of the Probate Court, or an estoppel as claimed in the fourth point herein.

The judgment does not conform to the verdict. It decrees that the partition be set aside ; the slaves to be the separate estate of Rotilda, the plaintiff below, and that said sum of $500 so found due her from the community property be deducted from $750, " the deficiency of the share of community to the minor defendants thereby caused, and the balance, $250 99, thus found, be charged against her separate estate to be by her, as guardian of the minors, to be accounted for, and that plaintiff have execution against defendants for costs ; and appoints Commissioners to divide the 343 1-10 acres in question, as set apart by the Commissioners appointed by the Probate Court. So it will be seen, that by the judgment, instead of gaining the interest in the land, as found for her by the jury, the petition not praying in the alternative, the plaintiff in effect has a judgment for five hundred dollars. This judg-

Dunham v. Chatham.

ment certainly does not conform to the verdict. (Mays v. Lewis, 4 Tex. R. 44.)

IV. The plaintiff below, Rotilda Chatham, was estopped by her acts and declarations, both before, at the time of, and after the division as made by the said Commissioners, from claiming said negroes, or said interest in the tract of 343 1-10 acres land, other than as apportioned by said Commissioners. The division or partition was made at her house by the Commissioners, she being present and making no objection. She gives receipts to be filed in the Probate Court, of the property thus apportioned, both in her individual capacity, and as guardian of her children. She had petitioned the Probate Court for this appointment of Commissioners to make the division, and finally petitions the Probate Court that she may adopt the very inventory filed by the Commissioners, as to the property apportioned to the minor children, as part of her petition ; and that she asks to be chargeable as guardian of the children with the amounts as valued by the Commissioners ; and asks that the appointment of appraisers, as provided by the Statute for such cases, may be dispensed with.

In Dazell v. Odell, (3 Hill's R. 219,) Cowen, J.: "But under the modern law to create an estoppel *in pais*, as against a party, there must be an admission intended to influence the conduct of the man with whom the party is dealing, and actually leading him into a line of conduct which must be prejudicial to his interest, unless the party estopped be cut off from the power of retraction. This, I understand, to be the very definition of an estoppel *in pais*."

Bronson, J., in the same cases, decided that to constitute an estoppel *in pais*, as against a party, there must be—"1st. An admission inconsistent with the evidence which he has proposed to give, or the title or claim which he proposes to set up. 2d. An action by the other party upon such admission. And 3d. An injury to him by allowing such admission to be disproved." This covers the case before us.

It cannot be urged that the plaintiff below acted in mistake or ignorance of the facts, and there are no allegations to that effect in her petition, and the Court erred in submitting that question, as to whether she was influenced by the administrator, to the jury ; and there is not a particle of evidence in the case to support such finding by the jury under the charge of the Court.

"The effect of an estoppel, whether legal or equitable, is the exclusion of evidence, and its existance must always be a question of law for the Court, and not of fact for the jury." (Lewis v. Carstairs, 5 Watts & Sergeant, 209.)

*J. W. Hutcheson,* for defendants in error. The first and second assignments are not maintainable on these several grounds :

I. Because the instrument on its face contains ambiguities of that character which, under the rules of law, are susceptible of explanation by parol proof.

And before making specifications under this general head, I would remark that the entire instrument shows that it was drawn by parties not versed in legal formulae, or familiar with legal requirements in such cases, and hence is loose, vague and singular.

Under this head we name—

1st. The last words of the instrument " the above is their portion for the present," would admit parol evidence to interpret its meaning. It is an expression "in short and incomplete terms," and "*per se* unintelligible," yet admitting of parol explanation " consistent with the written terms." If so, such parol explanation should be admitted. (Greenleaf's Evidence, Vol. 1, Sec. 282.)

And on being so explained, it is shown to mean an advancement to the donor's daughter Rotilda (the wife) at the time he was making all his children " equal." Again, those words " the above is their portion for the present " imports the con-

sideration of the writing, or transfer of the property, as a portion, or for a portion or advancement, and such gifts or advancements are deemed in law as made on consideration. The property is given in consideration of a "portion" he owes her (the daughter.) And such consideration being consistent with the one expressed, is inquirable into. (1 Phillips on Evidence, 549.)

Or those words again relate to, and may be connected with, the "subject-matter" of the instrument—the property donated—such property being the portion and such portion the property. It is deemed needless to cite authorities to show this may even be inquired into.

2nd. The evidence was admissible to show the circumstances under which the instrument was made, the better to discover the intent and meaning of the parties. (1 Greenleaf's Ev. Sec. 277.) The evidence was to show collateral independent facts and hence admissible. (1 Phil. Ev. 552 ; Roberts v. Short, 1 Tex. R. 373.)

By such evidence, we get the relation the parties sustained to each other, among other things.

3rd. This evidence was admissible as showing a part of the *res gestæ* of the transaction.

II. But again, on another and distinct ground it is clearly admissible to show by parol that he (Dunham) was a simple trustee and so took the property (in trust.) To forbid the facts to be shown in this case would operate a positive fraud on the wife Rotilda, which the law will not allow him to perpetrate. He, Dunham, under whom the minors claim, took the property as the proof shows, understanding that he was simply a trustee, accepted the trust, never repudiated it, and now the law of equity which enforces justice and discountenances fraud or iniquity, which intercepts double dealing, or the play for advantages, will not allow him, or those who claim under him, to assert a right in himself in fraud of others ; especially

those whom it was his business to protect. And parol evidence is admissible to show such secret trust. (10 Tex. R. 159 ; 9 Id. 482 ; 8 Id. 191 ; 5 Id. 93 and 512 ; 2 Id. 139 ; 3 Id. 1.) The consideration proceeding from the wife, the husband holds in trust.

Again, I submit under this head, if it were not competent under the allegations of the petition to introduce this evidence so as to make the instrument conform to the intention of the parties thereto. It is a well recognized principle of jurisprudence that any instrument may be so reformed. And in this case that object is pursued in the proper way, for the trustee being dead, there is no necessity for asking that the deed be now reformed ; but the proper prayer is, that the property now vest in accordance with the shown and avowed understanding of the parties.

Lastly under this head, I contend that even should the Court think the admission of the evidence an error, yet I hold it an immaterial one. The answer of defendants admit that the property was acquired from the father of the daughter, and in the absence of any direct and specific allegation to the contrary, under the Statutes of this State, it must be presumed for the benefit of the daughter. Such construction is in harmony with the entire policy of our laws, which ever seem to contemplate that the child shall inherit and receive all the benefits from the property of the father or ancestor. (See Statute of Wills then in force and Marital Rights.)

Third assignment clearly not maintainable.

It was not the best evidence, Wood being alive. Being neither a party to the record nor a party in interest, his declarations were not testimony against or in favor of any one. Besides, the statements, whatever they were, were not made in presence of the other parties interested, were made long after the transaction and were not a part of the *res gestœ*. Even had he desired he could not then have changed the manner of the property's vesting. We resorted to the only proper

method of getting at the intention of the parties, viz: the admissions, acts, &c., of all the parties (together at the time) of the making of the instrument.

Fourth assignment not maintainable.   (See 10 Tex. R. 444.) They would not attempt to show that he was not responsible for his counsel fees, which is presumable, the other parties being minors, and he must have made the contract, and even if they were responsible over to him, I presume it would be simply for a reasonable fee, and he would have to pay the excess.   It may have been a contingent fee and he was not released by the attorney.

But even were he ordinarily competent, he is incompetent for the purpose for which he was introduced, for in that particular he was interested.   It was to exculpate himself and to complete and perpetuate a wrong he had commenced. 'It would be monstrous if one could induce another, by undue influence, to consent to a certain course of proceedings, and afterwards, by his own evidence alone, prove that other acted voluntarily.   It would throw the widow in the power of the designing and perfidious.   The criminal could then testify in his own behalf.

No estoppel will ever arise unless injury would accrue to other parties, by permitting one to deny that to which at one time he had assented.   The law only raises an estoppel to prevent an injury, and an injury which results from a course of action induced by the admission.   They are discountenanced by the law and are raised only as a barrier to oppression and wrong.   Even where an admission has been made and acted on, the law will raise no estoppel, unless damage or evil consequences will ensue to the party so acting on its faith, by its being now denied.   "Such discussions belong to the forum of morals and not judicial tribunals."   There are abundant decisions to sustain this lien.   (1 Gill, 439 ; 10 Harris, 431 ; 5 Harris, 211 ; 3 Hill, 219 ; 6 Barr, 228 ; 5 W. & S.

287 ; 14 Conn. 345.) Now what injury can accrue to the minors by her now setting up her title. For the sake of argument, concede that she once admitted its being community property, in what respect will the children be injured by her denial now. No equities have intervened, no purchase made, their situation as to nothing altered, except that they have a gratuitous boon. By its retraction now, they stand where they would have stood before, and it only arises when parties cannot regain their former position. In fact, she offers in her petition to reinstate them as to anything they would lose by the change which was done. This closes the matter and is an effectual answer.

HEMPHILL, CH. J. There are two questions of importance in this cause, viz :

1st. Whether parol testimony was admissible to affect the import of the deed from James Wood so as to show that the name of John H. Dunham was inserted by mistake, and that the gift, though purporting to be joint to John H. Dunham and his wife, was intended for the separate benefit of the wife Rotilda, who was the daughter of the donor, James Wood, and

2nd. Whether admitting the separate right of the wife Rotilda, she is not estopped by her acts from the assertion of that right.

The import of deeds of purchase to either husband or wife is from necessity affected often by parol evidence. The presumption in favor of the community from such deeds may be rebutted by proof that the purchase was from the separate funds of either partner, and, when made in the name of the wife, it may be shown to be for her benefit, not only from the advance by her of the purchase money, but if the funds be advanced from the individual means of the husband the presumption of gift arises, and, if from the community funds, it may be proven that the husband intended a gift, and declaring

such intention ordered the deed in her name. (Higgins v. Johnson, 20 Tex. R. 389.)

This constant practice of resorting to parol evidence to establish the right of ownership in marital property acquired by purchase is an argument for relaxing the strictness of the rule in relation to such property acquired by donation, and especially where the instrument being joint to husband and wife purports to give the property to the community. As a general rule of law, parol evidence is admitted in equity to vary and reform written contracts and instruments upon the ground of accident, mistake or fraud, so as to make them conform to the actual intention of the parties. (1 Story Eq. Sec. 156–167.) It may be and is difficult to reconcile this principle with the rule which, in a Common Law Court, excludes parol evidence to explain or vary written instruments. Under our system and in the Courts of this State both are rules of equal authority ; the rule of exclusion being modified by that of admission in the case and under the circumstances in which, at equity, it has been held to be applicable.

The rule in equity as to the admission of parol evidence so as to make the instrument conform to the intention of the parties is well expressed in Hunt v. Rousmaniere's adm'r, (1 Peters, 12,) and is to the effect that where an instrument is drawn and executed which professes, or is intended, to carry into execution an agreement, whether in writing or by parol, previously entered into, but which, by mistake of the draftsman, either as to fact or law, does not fulfill or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement.

This rule, so far as it declares that instruments shall be conformed to the intention of the parties, is applicable to the case in hand.

It is shown by the evidence of two witnesses, one of whom

wrote the instrument, that James Wood, the maker, intended
to give the slaves to his daughter Rotilda for her separate use
and not jointly to her and her husband; that this inten-
tion was expressly stated at the time by Mr. Wood; that the
name of the husband, John H. Durham, was inserted in the
instrument with the intention that he should control or
manage the property as trustee, and to express the confidence
of the makers in him as such trustee; that his name was
inserted at the suggestion of the witness who acted as scri-
vener on the occasion; that the gift of the slaves was in
fact to the daughter, the husband only to have the control.
There appears to have been a family meeting at which Mr.
Wood, the father, made a partial division of his property to
equalize the portions of his children.   The witness Durham,
who did the writing, having stayed with them for a day or
two, and the matters being thoroughly discussed by all the
members of the family, must be presumed to have been well
informed of the intention of the donor in making the gift.
The rule of law that all property acquired by the wife through
gift remains to her separately though under the management
of the husband, has been so long established that actual
knowledge of its existence may with good reason be presumed,
and it is but fair to presume that, in this country where, by
law, there is a separation of property between man and wife,
a parent would so make a gift to a married daughter as that
in conformity with natural feeling and the general law it
would vest in her separate right, and this presumption gives
additional force to the statement of the witnesses that such in
this instance was the fact.

   This is not a case in which, on the advice of "counsel
learned in the law," a party has deliberately selected and de-
signated a certain form of instrument as the best adapted to
convey property according to his intention.   There is no evi-
dence that Durham the writer was a lawyer.   On the contrary,

his volunteered advice to insert the name of the husband is proof of his ignorance of the law on the subject-matter. There was not such deliberation and advice in the framing of the instrument as would operate as a circumstance to induce the rejection of relief from the legal import and effect of its terms. The object was a gift to the daughter, and this ought not to be defeated by the mistaken suggestion of an ignorant scrivener, that the husband should be joined with the wife, and thus make him a trustee and show confidence in him, and substantially, that such would be the legal effect of the insertion of his name. It must be remembered also that this is not a controversy between the wife and purchasers from the husband without notice, or creditors. The issue is by the heirs of the husband whose claims are little if at all superior to those of the husband himself. The contest is in substance between the original parties to the instrument. The equity of the wife is met by no opposing equities, and, under such circumstances, Courts have less hesitation in holding that instruments should be so construed as to carry into effect the intention of the makers.

The evidence shows that the donor intended the husband to act as trustee. Had the gift been to the husband alone, it might have been shown by parol evidence that the gift was in trust for the use of the wife. It has been held in several cases that the creation of trusts by parol and the proof of them by parol evidence has not been prohibited by the Statutes of this State, and if a trust for the wife, by parol, could be fastened upon a separate gift to the husband, much more naturally and reasonably would it attach to a joint gift to the husband and wife. We conclude that parol evidence was admissible to show that the gift, though joint to husband and wife on the face of the deed, was intended and should operate only as a gift to the wife, and that the evidence was sufficient to establish that such was the intention of the gift.

The next question, viz: Was the wife estopped by her acts

from claiming these slaves in her individual right, must be answerd in the negative. The fact that the slaves were inserted by the administrator in the inventory as community property is of but slight consequence and should not affect the wife, and although she appears subsequently to have been either ignorant of, or remiss in relation to her rights, yet she seems to have had some knowledge of them and became dissatisfied, and an order was made by the County Court for the correction of the inventory, which was in fact never executed. But it is said that she did not object to the division, but, on the contrary, expressed her satisfaction and showed her acquiescence by receiving the shares of her minor children as their guardian, and placing in the inventory of her wards property which she is now claiming as her own. If this were all admitted, yet the presumption of law is that women are not well informed of their rights, and the appellee, Rotilda, as appears from the evidence, forms no exception to what may be regarded as a general rule. During marriage, she labored under the ordinary disability of supposed incompetency to contract, and in her widowhood she appears to have relied on the administrator. She does not appear to have had a full knowledge of her rights until the duties and responsibilities of approaching marriage aroused her to a sense of her situation. But the estoppel which is claimed is of that class styled equitable, and this only arises when the contract of the party estopped is fraudulent in its purpose or unjust in its result. (2 Smith's L. Cases in Dutchess of Kingston's case.)

There must be some admission or act intended to influence the conduct of another, and actually leading him into a line of conduct which must be prejudicial to his interest, unless the party estopped be cut off from the power of retraction. (3 Hill, 219.) Now, is there any fraud in the wife contravening the right of the husband or his heirs in this property, or would there be any injustice in assigning the wife this property, if it was really her own. The conduct of the heirs

has not been influenced by her acts. They have been led into no line of dealing which must operate to their prejudice unless their mother be estopped from disturbing the property as now arranged.

They have made no sales or contracts with reference to these slaves. There was no equivalent or compensation given the widow at the distribution, and they cannot complain if they be restricted to the property to which they have legal right, and that the widow should reclaim that which was not theirs but was always her own.

There is no fraud or injustice in an arrangement by which claimants should have their own property and no more, and there are no circumstances in this case which would make justice to the widow operate a legal injury to the heirs of the husband.

But no change was wrought in the property before the suing out of the *certiorari*, except that it passed from the administrator into the hands of the distributees. This writ may not operate as a supersedeas, so as to affect any arrangements or sales of property by a distributee prior to the writ. But there had been no substantial change. The property remained as originally divided ; and the *certiorari* related back to the partition, and no matter what she said, or how much satisfaction she may have expressed at the distribution ; yet if she brings her writ in time her mere acquiescence previously goes for nothing.

The proceedings are to be revised and corrected. They are not final, in an appellate sense, until after the lapse of two years.

The judgment may be reversed or reformed as the law may require, and the property redistributed according to the very right of the parties in the cause. Any rights which may have grown up under the judgment of the County Court, prior to the supersedeas, cannot be disturbed, as for instance rights claimed through public sale under the judgment, &c.

The other questions in this cause require no special consideration.

We are of opinion that the judgment of the District Court should be affirmed, except in so far as it adjudges all the costs against the defendants. The administrator was not a necessary, scarcely a proper party to this suit. The allegations of undue influence exercised by him, appear to be but slightly supported by the evidence. In making the inventory, he properly regarded the face and legal import of the deed as his guide. Had the slaves been inventoried and distributed to the wife as her separate property, the partition might have been disturbed years afterwards by the minors; and if in the meantime the witnesses to the trust in the deed had died, the division would have been set aside; and the charges now brought against the administrator by the widow would then have been urged against both the widow and the administrator. The costs should come out of the property in controversy. We are of opinion that the costs in both the District and in this Court should be equally divided between the plaintiffs in the suit below and the minors, by their guardian *ad litem*, who are defendants; that the judgment of the District Court be reformed, so far as it adjudges costs against all of the defendants; and that in all other respects the judgment be affirmed.

Judgment affirmed.