Syllabus.

JAMES E. SCOBY v. WILLIAM C. SWEATT ET AL.

In a suit by a forced heir against the legatees and the other heirs of their common ancestor to contest the will and recover the plaintiff's share of the estate, it was competent for the plaintiff, and incumbent upon him, if in any aspect of the case he would be entitled to a judgment, to prove that the defendants had received a larger proportion of the estate than they could legally claim under the law of forced heirship and under the will, so far as it could take effect. It was error, therefore, for the court below, apparently on the assumption that the plaintiff was precluded by limitation or estoppel, to exclude such proof on the ground of irrelevancy.

It was also necessary in such a case, for the purpose of making a proper distribution of the estate independent of the will, to ascertain and fix the amount of advancements made to the different heirs, and the value of such advancements at the time they were made. It was error, therefore, to exclude, on the score of irrelevancy, evidence tending to establish those facts.

An heir, on the distribution of the estate of his ancestor, cannot enlarge his distributive share by proving that property advanced to him had diminished in value since he received it. Nor, on the other hand, can his share be diminished by proof that property advanced to him had enhanced in value since he received it. Wherefore, it was not error to exclude the testimony offered for the purpose of proving what the value of the advanced property was at the time of the trial. (Paschal's Dig., Art. 3420, Note 789; Chevalier v. Wilson, 1 Tex., 170; Parker v. Parker, 10 Tex., 91, cited by the court.)

If the plaintiff were entitled as a forced heir to a judgment against the defendants for any part of the property received by them under the will of their ancestor, he was also entitled to an account of the rents and profits of it, subject to equitable deductions in favor of the defendants on account of the nature and character of the property, the circumstances of their possession, the absence of any demand prior to the commencement of the suit, and such expenditures and improvements as may have been made by the defendants. Testimony, therefore, showing the value of the rents and profits was relevant, and should not have been excluded. (Dunham v. Chatham, 21 Tex., 249, cited by the court.)

It being insisted on behalf of the plaintiff, that the defendants' possession of the property of the estate could not be regarded as adverse to the plaintiff until after the final settlement of the estate in the county court, it is indicated that this position is not well taken with respect to the possession of an heir after a partition of the estate by order of the county court, though prior to the final settlement. (Cryer v. Andrews, 11 Tex., 170, cited by the court.)

With respect to the effect of the statute of limitation on this case, the import-
ant question was, whether the plaintiff, by force of the general law of limit-
ation, was barred of his rights in the personal property by the adverse
possession of the defendants for more than two years before the commence-
ment of the suit, or whether the plaintiff's rights were saved to him during
the four years allowed him by the statute within which to contest the will
and assert his claims? It is a consequence of the statutory provision last
referred to, that parties who hold and claim under a will do so subject to
the risk of their title and possession being invalidated on account of the
defects in the will, which the law permits to be shown by suit brought
within four years. (Wright v. Hopkins, 17 Tex., 30, cited by the court;
Paschal's Dig., Art. 4617, Note 1027.)

It is a universally admitted principle, that statutes on the same subject must
be construed together, and with reference to each other, and effect is to be
given, as near as can be, to all the enactments on the same subject, to the
end that the legislative intention may be effectuated. If there be an appar-
ent conflict between the enactments, general intention is limited and con-
trolled by special intention. Hence it follows that it is the statute specially
prescribing the time within which wills must be contested by suit, (Pas-
chal's Dig., Art. 1262, Note 463,) and not the general law of limitation,
which must govern in determining whether the remedy of the plaintiff in
this suit was barred by limitation.

A petition should contain a full and clear statement of the cause of action;
and, if it do not, it is the province of an amendment to supply the defect.
But, if the original petition be wanting merely in the fullness or the clear-
ness of its statements of the cause of action, it cannot be said that an
amendment curing such deficiencies is the commencement of a new suit.
If it appear by the original petition that the defendant is sued on a valid
cause of action, however defectively it may be presented in the petition,
the statute of limitation in his favor is interrupted and stopped. (Coles v.
Portis, 18 Tex., 156; Kinney v. Lee, 10 Id., 155; Wells v. Fairbanks, 5 Id.;
583, cited by the court; Paschal's Dig., Art. 54, Note 243.)

The plaintiff accepted and received payment of a legacy of $1,200, left him in
the will which he contested in this suit, and it was contended for the de-
fendants that, by accepting the legacy, he had elected to abide by the will,
and was thereby estopped from contesting it or claiming as a forced heir in
opposition to the disposition of the estate made by the will. But is is *held,*
that the doctrine of election has no application to this case. In receiving
the legacy the plaintiff was not put to his election, there were no inconsist-
ent and alternative rights between which he was required to make choice,
and the amount of the legacy was much less than he was absolutely and
unconditionally entitled to as a forced heir.

But even if the doctrine of election were applicable, it seems that the plain-
tiff's acceptance of the legacy would not be held to be an election by him
to abide by the will, when it appeared that the legacy was paid to him at

his residence in Tennessee soon after he attained his majority, while the bulk of the estate was situated in Texas, and that the plaintiff was probably ignorant both of the value of the estate and of the laws of Texas by which its distribution would be governed.

It is now well established, that whenever an act is done or a statement made by a party, which cannot be contravened by him without fraud on his part and injury to others whose conduct has been induced by the act or statement, the character of an estoppel will be attached to what would otherwise be mere matter of evidence, and it will be binding on a jury even in opposition to proof of a contrary nature. But to constitute an equitable estoppel, the act or statement must be shown to have had a direct or immediate influence upon the conduct of the party claiming its benefit.

It being insisted on behalf of the defendants that the partition of the estate made between them operated to estop the plaintiff from maintaining this suit, it is *held*, that it cannot be so adjudged, for the reasons that the plaintiff was not a party to nor present at the partition, nor was it in any manner influenced by him.

Appeal from Ellis. The case was tried before Hon. Nat. M. Burford, one of the district judges.

On the 4th day of January, 1854, there lived in Ellis county, Texas, a man by the name of Edward Sweatt, with his good wife, Nancy Sweatt. He was blessed with living children, Cynisca Sweatt, L. A. Sweatt, R. V. B. Sweatt, G. B. Sweatt, Elizabeth Sweatt Ligon, Mary P. Sweatt Davis, W. C. Sweatt, and Alexander Sweatt. He had buried a son, Edward C. Sweatt, and his widow, Sarah A. Sweatt, and four young Sweatts. He had also buried a daughter, Sarah Sweatt Scoby, who was the mother of James E. Scoby, the plaintiff in this suit. The ancestor of all this numerous progeny of Sweatts had accumulated much of this world's goods, estimated at the value of $60,000, or some other such large sum. The old gentleman had made advancements to some of his children, which will be noticed hereafter. Had the good man chosen to die, leaving the law to dispose of his accumulations in Texas, it would have descended thus: Whatever was his own, independent of any community with his wife,

and one-half of the property, which they had acquired in
Texas, in accordance with our laws governing marital
rights, would have descended to these children and grand-
children, *per capita et per stirpes*, to be divided into ten
equal shares, subject however to the further charge that,
as to the separate property, the widow, Nancy, would have
been entitled absolutely to one-third of all money, personal
chattels, and *choses* in action, and to a life estate in one-
third of the land and slaves, who, for that purpose, were
regarded by our law as real estate. (Paschal's Dig., Arts.
3422, 4642, Notes 787, 1049.)

But this husband and father had the natural desire to
direct these accumulations by will. And he seems to have
done so regardless of our then wise law about forced heir-
ship. (Paschal's Dig., Art. 3868, Note 897.) If the *Reporter*
understands the voluminous decisions annotated in this
note, Edward Sweatt might make a will, but he could not
disinherit any child, except for good personal cause to be
proved; he might dispose of all his property by will, but
could not defeat the childrens' rights, as forced heirs, to
three-fourths of the estate. One-fourth of the estate was
the absolute disposable portion. And if all were given to
the children, some more and some less, the law so inter-
fered as that the preferred children only got their shares
as legal distributees, and the disposable portion (one-fourth)
under the will.

So that, under these restrictions, if Edward Sweatt's
estate was worth $60,000, he might by the first disposition
bequeath $15,000 to a charitable institution, to a stranger,
to his widow, or to any preferred child; the law cast the
residue, $45,000, upon his ten children, as *parceners*, each
entitled to one-tenth, or $4,500. And to attack a will,
which disregarded this rule, the law gave four years to the
disinherited child after the probate of the will. (Paschal's
Dig., Art. 3868, Note 897, p. 644.) But by another law,

there is a reservation in favor of infants until four years after their majority, as is ruled in this very case. (Paschal's Dig., Art. 4517, Note 1072.)

With these surrounding and controlling laws and facts, Edward Sweatt called around him counsel, and on the 4th day of January, 1854, he executed his last will and testament.

He bequeathed certain property to his wife and to each of his children. The inequality among the latter arose out of questions of previous advancements. To his grandson, Scoby, the plaintiff, he gave $1,200, and a negro girl of the estimated value of $800. The youth received the $1,200, but the negress had been advanced to his mother in her lifetime. This suit was to assert his right as a forced heir. The cross-bills of some of the other defendants had the same object in view. The questions turned upon the time in which the will should have been attacked; the effect of an amendment introducing details; the estoppel arising out of receiving the legacy under the will; some questions about advancements, and some rules in relation thereto; and the effect of a certain arbitration, wherein the plaintiff had been left out.

These questions, arising upon the pleadings of the parties, the bills of exception, the facts proved, and the decree of the court, which disregarded the statute of forced heirship, are thus given by Mr. Jackson, who "waded through" the voluminous record.

The appellant brought this action on the 15th of December, 1858, for the purpose of invalidating the will of his maternal grandfather, Edward Sweatt, deceased, and for an account against the executors of the will, and a recovery against them and the legatees of the portion of the estate which inured to the appellant by virtue of the law of forced heirship, which was in force at the time of the decease of the testator.

Edward Sweatt, the testator, died in Ellis county early

in the year 1854, leaving an estate valued at nearly $60,000, of which, by a will and codicil made shortly before his death, he undertook to make a complete disposition.

The record is very voluminous, and the will itself of unusual length and full of minute details, so that an attempt even to condense their contents would serve rather to confuse than to elucidate the case. We shall state, therefore, only such of the facts as have a direct reference to the rulings of this court.

The plaintiff became of age early in January, 1855, and the original petition was filed before the expiration of four years thereafter. In this original petition he alleged that he was the son and only child of his deceased mother, Sarah Scoby, formerly Sweatt; that her father, Edward Sweatt, the testator, at the time of his decease, had a wife, eight living children, and also grandchildren by a deceased son; that since the death of the testator another of his sons had died, leaving a widow, but no children; that by the will of the testator, made only a few days before his death, two of the still surviving sons and the deceased son were made executors; that by one of the provisions of the will a legacy of $1,200 and a negro woman and her increase were made to plaintiff, of which he had received the money, but not the negro or any other part of the estate; that the testator was possessed at his death of an estate in lands, personal property, money, and *choses* in action, worth $60,000, after payment of all debts; that all of this property, except the legacy to petitioner, was bequeathed by the will to the widow of the testator and to his children and grandchildren by his deceased son; and that all of said property had been taken by the executors and distributed according to the will. Petitioner further charges, that at the time of the death of the said Edward Sweatt he could not, under the laws of Texas then in force, dispose, by will, of more than one-fourth of his

entire estate; that as to three-fourths thereof his children and grandchildren were forced heirs, and that petitioner was therefore entitled to one-tenth of three-fourths of the whole estate. The petitioner brings into court a certified copy of the whole proceedings and record of the county court relating to the estate, and prays that the will be annulled as to three-fourths of the estate, and that one-tenth thereof be set apart to petitioner, with $2,000 as damages for its detention from him, or, in case he cannot now have his portion in specific property, that he have judgment for its value and for his damages against the several defendants, and that he have general relief, &c.

The widow of the testator, and the other legatees, to whom he had bequeathed the bulk of his estate, were made parties defendant.

At the January term, 1859, of the district court, the defendants answered, assigning special exceptions to the plaintiff's original petition, because it contained no averment that there had been a final settlement of the estate in the probate court, and a discharge granted to the executors; that the petition did not set out or define the property; that it contained no cause of action showing any legal liability on the defendants, and that its averments are indefinite, and state conclusions instead of facts.

Further answering, the defendants deny all the allegations of the petition, and say that the plaintiff was himself a legatee under the will, and had received all the property and money bequeathed to him thereby, and is consequently estopped from disputing its validity; that he had notice of the distribution among the legatees, and acquiesced therein; that such distribution was made in the winter of 1854, or the spring of 1855, and that plaintiff's cause of action accrued more than two years before the bringing of this suit, and defendants therefore plead the statute of limitation.

Upon the filing of this answer, the plaintiff took leave

to amend, and in the succeeding January filed an amended petition, more than four years having then elapsed since he had arrived at full age. In this amended petition the plaintiff states his case more fully and specifically. He details sundry advancements made by the testator to the several defendants, and designates the property respectively received by them; alleges that the negro woman mentioned in the bequest to himself was not the property of the testator at the time of his death, but had been advanced by him, many years previously, to the mother of the plaintiff; claims that all the advancements made to all the heirs should be brought in for distribution, as also all hires and other profits received by the defendants; specifies the land and negroes divided among the defendants, and charges that all the other assets, consisting of cash, notes, accounts, certain turnpike stock, &c., had been taken by the executors and defendants and converted to their own use, or so wasted and squandered that they cannot now be produced for allotment according to law: wherefore he prays for his share of the land and negroes in kind, and for judgment against the defendants for the value of his share of the other assets.

As part of this amended petition, the plaintiff filed a copy (marked A) of a paper from the probate court, entitled "Agreement and decision of referees;" and also a copy (marked B,) of another paper from the same source, entitled "Final settlement." These documents related to an arbitration had between the defendants with regard to a considerable portion of the estate, which the testator had devised to the son who died after his own decease, and which portion, by the terms of the will, reverted to the defendants, and was distributed among them by the arbitration proved by these papers. And these are the documents referred to in the first bill of exception taken by the plaintiff, and the exclusion of which as evidence by the court below is held by this court to have been error.

The trial was held at the spring term, 1861, when a jury was waived and the cause was submitted to the court. The court below, as already indicated, excluded the documents marked A and B, relating to the division by arbitration of a portion of the assets among the defendants, and the plaintiff took his first bill of exceptions. The plaintiff introduced a witness to prove the advancements made to the several children of the testator, and their value when made, and also at the time of the trial, but the court below excluded the testimony, and the plaintiff took his second bill of exceptions. The plaintiff further offered a witness to prove the value of the hires of the negroes distributed among the several defendants, from the time of the distribution down to the time of the trial; but this was also excluded by the court, and the plaintiff took his third bill of exceptions.

In the opinion of this court reference is made to the answer and cross-bill of Williams and wife. Mrs. Williams was a daughter of the testator. She and her husband contended that they had not received the portion of the estate to which they were entitled.

There are very many more facts narrated in the record, but those here stated and those indicated in the opinion suffice to present the questions involved in the rulings of this court.

The court below rendered a general judgment against the plaintiff, and he appealed. The errors assigned by him are sufficiently pointed out in the opinion.

*Hawkins & Kemble,* for the appellant.—The defendants relied in the court below on the three following propositions, each of which we will notice in order:

I. That the original petition was not good on demurrer, or, in other words, that it showed no right of action; and, therefore, that the statute of limitation continued to run,

46—XXVIII.

and the action was barred before the amendment was filed disclosing a cause of action.

II. That the defendants had been in possession of the property from the time of the partition and distribution in 1854 till the institution of this suit in 1858, and had acquired title by their possession for two, three, and five years.

III. That by accepting the legacy of $1,200 in money, the plaintiff had elected to take under the will, and was estopped from now contesting its validity.

The only office of the amendment was to show specifically in whose hands each piece of property was placed. The whole cause of action had been set out in the original petition. It was not necessary that the plaintiff should deny that cause existed for his partial disinheritance, nor that he should deny that such cause had been stated in the will, nor that he should exhibit the will for the purpose of showing that such cause had not been stated by the testator.

A reference to Hartley's Digest, article 3263, will show that if such cause had existed, and had been alleged in the will, the plaintiff need not have alluded to it in his petition, but the defendants must have alleged it and proved it. The burden of proof was on them; a demurrer to the original petition could not have been sustained for want of such denials. The case of Kinney v. Lee, 10 Tex., 155, is one in which suit was brought on a conditional promise to pay, without alleging the happening of the condition, and this was held to interrupt the running of the statute.

See Wills v. Fairbanks, 5 Tex., 583, where it is held, that a general statement of a fact, although defective, will admit proof of the fact. (See Coles v. Portis, 18 Tex.) Suit on an account against an administrator, without alleging presentment and rejection, and afterwards amendment alleging presentment: Held, that the original suit stopped the running of the statute.

As to the election of the plaintiff to take under the will, counsel cited 19 Tex., 311; 20 Id., 745; and Story's Eq. Juris., § 120, *et seq.*

*Ferris & Nicholson,* for appellees.—In support of the position that plaintiff could not recover on his original petition, we cite Story's Eq. Plead., § 3241; 1 Chitty, 260, and note. "In an action on the case against a judge of probate for appointing as guardian to a minor child a man who was insolvent, and neglecting to take security from him for the faithful discharge of his duty as guardian, a declaration stating that the plaintiff was owner and legal possessor of $2,000 worth of personal property, which was spent and unaccounted for, was held bad after verdict." (Phelps v. Stiel, 1 Day, 315.)   A petition upon a note which does not charge its execution by defendant has often been held bad on demurrer.   The allegation is material.   And if the case of Hopkins v. Wright, above cited, is considered good authority, allegations formally contesting a will are unnecessary; the law is construed as a four years' statute of limitation, when allegations as against the property become material.   These do not appear until the coming in of the amended petition, after the lapse of more than four years.

But if it is considered that the statute merely contemplates contesting the will by proceedings having that object directly in view, and that the petition is sufficient for that purpose, or considering the will as void, we hold that plaintiff is bound by the general law of limitation. In the case of Anderson v. Stewart, 15 Tex., 290, it is held, that "If an attempt be made to obtain a partition, although the legal proceedings by which it is effected may be invalid or defective, still, being a matter of public notoriety, the co-tenant is bound at his peril to take notice of the adverse possession thus set up."   The partition of all the property was made in 1854, (except the property devised for life to the widow and three hundred and twenty

acres of land;) plaintiff became of age in January, 1855, and the evidence shows that the legatees held peaceable and adverse possession for five years before the amended petition, setting up an action against the property, was filed, and for nearly four years before the suit was brought. If the property now claimed by plaintiff had been expressly devised by the will to him, his action would clearly have been held barred by the general law. Is he in a better condition, claiming the same property over the will, and by force of the law, in his own right? Was it ever so intended by the legislature in allowing him four years to contest the will? We think clearly not. If he waits until a few days before the expiration of the four years, others should not suffer from his *laches*, but he must abide by the condition of the estate as he finds it. If the administration has been closed, his claim must yield to newly acquired rights by others. For further authority that partition is an ouster, see Cryer v. Andrews, 11 Tex., 181.

We hold also that plaintiff is estopped from now setting up any claim against the bequests of the will. This point is argued by appellant purely as a question of equitable election. The testator bequeathed to plaintiff the negro, Jane, which had been advanced to plaintiff's mother, and which he admits he has received, and a cash legacy of $1,200; and it must be presumed that he intended this to be in place of any other claim plaintiff might have, from the fact that the residue of the estate was given to the others. And when he accepted this legacy under the will, he may be said to have made his election. (Upon this point see 2 Story, 1093, 1097; 4 Kent, 57; 2 Will. on Ex., 1206.)

Counsel also cited, with reference to the doctrine of estoppel, 1 Phil. on Ev., 355; 14 Tex., 176; 17 Id., 78; 20 Id., 745.

*A. Bradshaw*, for Williams and wife.

Moore, C. J.—This suit was brought by the appellant against the legatees in the will of Edward Sweatt, deceased, appellant's grandfather, to recover from them the portion of the estate of said Edward Sweatt which he claimed as a forced heir.

If appellant were entitled, in any aspect of the case, to a judgment against the appellees, it cannot be said that the evidence offered by him, and referred to in the first bill of exceptions as exhibits A and B of his amended petition, could be properly excluded upon the ground of irrelevancy. To sustain his action, it was incumbent upon appellant to show that appellees had received a larger proportion of the estate of their ancestor than they could legally claim as forced heirs and as legatees of the disposable part of his estate.   The testimony seems clearly pertinent to this end.

In order to make a proper distribution of the estate, independently of the will, it is necessary to ascertain and fix the amount and value, at the time they were made, of the advancements which had been received by the different heirs among whom the property should be divided.   The objection of irrelevancy was not, therefore, well taken to so much of the testimony shown to have been excluded by the second bill of exceptions as would have gone to prove the value of the advancements made by Edward Sweatt to his children, at the time they were received.   But in respect to that part of the testimony offered for the purpose of proving the value of such advancements at the time of trial, the objection was well taken.   An heir, on the distribution of the estate of his ancestor, cannot enlarge his distributive share of the estate by proof of the diminution in the value of the property advanced him after its reception; nor can his share be diminished by evidence of its subsequent increased value.   (O. & W. Dig., Art. 351; Chevalier v. Wilson, 1 Tex., 170; Parker v. Parker, 10 Tex., 91;) [Paschal's Dig., Art. 3426, Note 789.]

Unquestionably, if appellant were entitled to a judgment

against appellees for any part of the property which they had received under the will of their ancestor, he was also entitled to an account for its rents and profits, subject, of course, to the equitable deductions which appellees may claim, owing to the nature and character of the property, the circumstances of their possession, the absence of any demand prior to the commencement of the suit, and the expenditures and improvements which they may have made upon it. It cannot, therefore, be properly said that the testimony, which is shown by the third bill of exceptions to have been excluded, was not pertinent to the matters at issue in the case. (Dunham v. Chatham, 21 Tex., 249.)

What we have said, in respect to the evidence shown by the bills of exceptions to have been excluded, disposes of the questions presented in the first three assignments of error. The 4th assignment complains of the overruling of the exceptions to appellees' answer. A general exception was taken by appellant to paragraphs of the amended answer, stated in the exception as numbered in the margin No. 2, No. 6, No. 9, No. 11, and No. 13. But, as copied into the transcript, this answer is neither divided into paragraphs, nor has it any marginal numbers. The exception, therefore, in the form presented to us, is wholly unintelligible, and must be disregarded. It is, however, specially excepted to the answer, 1st, that the possession of the property by appellees, before the final settlement of the estate of Edward Sweatt, deceased, in the county court, was not adverse to the appellant; 2d, their possession could not give them title in less than four years after appellant became twenty-one years of age.

The first of these exceptions, considered simply with reference to the nature of the possession of one heir in respect to the rights of another, after a partition of the estate by an order of the county court, does not seem to be well taken. (Cryer v. Andrews, 11 Tex., 170.)

But whether it shall be said, abstractly speaking, that there is an adverse possession of the property as to appellant, is of comparatively little importance in the determination of the present suit. The important and vital question to the parties is that presented in the 2d exception to appellees' answer, by which appellant maintains that his right of action is not affected by less than four years of such possession after the probate of the will and the removal of his disability from nonage. If we are to be guided in determining the question by the general law of limitation, the right to recover the personal property is lost after two years' adverse possession, and, as to the property of this kind, the defense must be held good. On the other hand, if effect is to be given to the purpose and object of the law in allowing four years after its probate within which parties desiring to do so may contest the validity of a will, and the benefit thereby intended to be secured to them is to be preserved, the exception of appellant should have been sustained.

It is a universally admitted principle, that statutes upon the same subject must be construed together and with reference to each other. If it can be done consistently with their provisions, effect shall be given to all the enactments on the subject. The legislative intention is to be ascertained and followed. Where there is apparent conflict, general intention is limited and controlled by special intention.

Guided by these plain and simple elementary principles, there is little difficulty in concluding that the law specially prescribing the time within which suits must be brought to contest a will furnishes the rule by which we must be governed in deciding the question. (O. & W. Dig., Art. 699.) If a cause for which a child or children may be disinherited is assigned in the will, it is expressly declared, if "such child or children shall afterwards, and within four years after said will is admitted to probate, contend for

his, her, or their rights to the estate, by denying the existence of said cause, it shall be incumbent upon such person or persons taking said estate to the exclusion of such child or children to prove that such cause did exist during the lifetime of the testator; otherwise said last will shall be declared void as to such child or children," &c. (Hart. Dig., Art. 3263;) [Paschal's Dig., Art. 3868, Note 897, p. 644.]

The plain import of this language would seem conclusive, unless we are to suppose that a child who has been disinherited without any cause being assigned in the will is not within the protection of the statute, while one as to whom cause has been assigned is protected by it. Obviously no one would insist upon such a conclusion. The law gives to parties whose rights are to be affected by a will four years from its probate to vindicate and redress themselves; and, as a consequence, those who hold and claim under such will, hold and claim subject to the penalty of any informality, which the law permits to be shown in their title by suit brought within that time. (Wright v. Hopkins, 17 Tex., 30.)

The 5th and 6th, and only remaining assignments of error, complain that the judgment was for appellees, and not for appellant.

On the trial a jury was waived, and the cause submitted to the decision of the court. We cannot, therefore, so readily perceive the grounds upon which the case was decided as if there had been a trial before a jury, and we had in the record the instructions given them on the law by the court. From the argument of counsel, the judgment seems to have been given against the appellant upon one of the following grounds:

1. Appellant's right of action was barred under the general statute of limitation at the filing of his original petition.

2. The original petition did not disclose a cause of

action, and four years had elapsed after the removal of his disability of infancy before the filing of his amended petition.

3. Appellant, by accepting the legacy bequeathed him in the will, had elected to take under it, and was thereby, and from his acquiescence in the partition and distribution made under its directions among appellees, estopped from contesting it.

The first of these objections has been already considered, and we will not further advert to it. If the second were the ground upon which the case was decided in the court below, undue weight was given, we think, to the defects in the original petition. It would be useless to enter into an analysis of the allegations of the petition and its conceded and supposed defects. A petition should contain "a full and clear statement of the cause of action." If it do not, it is the province of an amendment to supply such defect. But it cannot be said, if the original petition is merely wanting either in the fullness or clearness of its statement of the cause of action, that the amendment curing such defect is the commencement of the suit. If it appear from the petition that the defendant is complained of for a valid cause of action, however defectively it may be presented, the statute of limitation in his favor will be stopped. (Wills v. Fairbanks, 5 Tex., 583; Kinney v. Lee, 10 Id., 155; Coles v. Portis, 18 Id., 156.)

Nor, in our opinion, is there any greater weight in the third and remaining ground of objection to appellant's right to a recovery in this suit. Evidently, his reception of the $1,200, given him in the will, does not present a case of election to take under the will, and estop him from claiming his rights as an heir. This legacy was paid appellant in the State of Tennessee, just after he reached majority. The bulk of the property belonging to the testator was in Texas. Appellant may have been, and

probably was, informed as to the law by which its distribution was governed. Nor is it shown that he had any definite knowledge or information as to the value of the estate. But, aside from these considerations, he was not put to an election in receiving this legacy. There was here no inconsistent and alternative rights, between which he was required to make choice. (2 Story's Eq., § 1075, *et seq.*) The money received was much less than appellant was absolutely and unconditionally entitled to. The doctrine of election, as is said in 2 Will. on Ex., 1236, " does not preclude a party, claiming by the will, from enjoying a derivative interest, to which he is entitled at law, under a legal estate taken in opposition to the will."

Still less reason is there for saying that appellant is estopped by the partition from contesting the validity of the will. A much broader scope has been given of late in the courts of England and this country to the doctrine of estoppel *in pais* than it formerly had. It is now well established, that whenever an act is done or a statement made by a party, which cannot be contravened without fraud on his part and injury to others, whose conduct has been induced by the act or admission, the character of an estoppel will be attached to what otherwise would be mere matter of evidence, and it will become binding upon a jury, even in opposition to proof of a contrary nature. But to constitute an equitable estoppel, the act or admission must be shown to have had a direct or immediate influence upon the conduct of the party claiming its benefit. (Watkins v. Peck, 13 New Hamp., 360.) No such estoppel can arise without proof of wrong on one side, and injury suffered or apprehended on the other, nor unless the injury be so clearly connected with the wrong that it might and ought to have been foreseen by the guilty party. (Copeland v. Copeland, 28 Maine, 525; Abel v. Fitch, 20 Conn., 90.) There must, unquestionably, be some degree of wrong; for a statement innocent in itself and susceptible of being

withdrawn or contradicted, unless it be made with the knowledge that it will or may be acted on, cannot be rendered binding by what subsequently occurs. (Howard v. Hudson, 2 Ell. & Blackb., 1; Foster v. The Glen Martin Life Insurance Company, 3 Id., 48.) "Estoppels *in pais*," said Lewis, J., in Billings' Appeal, 5 Harris, 211, "are well founded, when confined to the legitimate purpose of preventing one man from being injured by the acts or misrepresentations of another. When no injury results from a misrepresentation, its decision belongs to the forum of morals, and not to the judicial tribunals." The connection between the wrong and the injury should be direct and apparent, and such as to leave no reasonable doubt that the former is the efficient cause of the latter. For, as the effect of an estoppel is to prevent the assertion of rights unquestionably valid, or preclude defenses which would be otherwise good, justice requires that it should not be enforced, unless sustained in every particular. (Carpenter v. Hillock, 12 Barb., 128.) In order, therefore, to raise an express or implied admission of one party from the rank of evidence to the dignity of an estoppel, it must not only be shown that its retraction will be injurious to the other party, but that the injury results from the course of action induced by the admission. Whatever, therefore, the degree of moral wrong on the one side and injury on the other, there will be no estoppel, unless the injury be the direct and natural result of the wrong. (Taylor v. Zepp, 14 Mo., 482; Alexander v. Walter, 8 Gill, 230; 2 Smith's Lead. Cases, 644, *et seq.*)

That the facts in this case are altogether insufficient to create an estoppel against appellant is much too plain for argument. He was not present at, nor a party to, the partition between the appellees. It is not shown he had any knowledge of it till long after it occurred. They acted in the matter independently of, and without reference to, any act or admission of appellant. The partition was

made long before he received the legacy which they claim should estop him. In this there was neither fraud nor concealment on his part, nor any confidence reposed on their part, nor injury resulting from it.

As a jury was waived and the case submitted to the court, if all the facts had been established to enable us to make a final decree, this might be done in conformity with our general practice, without sending the case back to the district court; but, as this is not the fact, it must be remanded for further proceedings.

The defendants, Williams and wife, filed an answer in the nature of a cross-bill, claiming that it was the intention of Edward Sweatt to have bequeathed Mrs. Williams an equal portion of his estate with his other children, and that the failure to do this was by mistake, and also that her rights as a forced heir were violated by the will. A demurrer was sustained to their answer, and notice of appeal given by them; but, as they failed to perfect their appeal and to assign errors upon the proceedings had in the district court, we do not deem it proper to discuss the questions presented in the well-prepared argument filed for them in this court.

The judgment is reversed, and the cause

REMANDED.