**CUMMINS et ux. v. CUMMINS.**   (No. 1697.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 13, 1920.)

**1. Husband and wife ⊙═⊃262(1)—Property acquired during marriage presumed to belong to community.**

Where property is acquired by husband and wife during the marriage relation, there is a presumption that it is community property.

**2. Husband and wife ⊙═⊃262(1)—Showing part payment was husband's separate property rebuts presumption of community purchase.**

Ordinarily, in the absence of contrary intention, showing that part of the initial payment for property purchased by husband and wife constituted the separate property of the husband would be sufficient to rebut the presumption the property became community property, and would require a holding that the husband owned a separate interest in the proportion his separate funds bore to the total price, whether title was taken in the name of husband, or wife, or jointly.

**3. Husband and wife ⊙═⊃249—Status of property acquired controlled by intention.**

Except where the deed to property acquired by husband and wife expressly declares the status of the property as community or separate property, whether it is conveyed to the wife, or the husband, or to them jointly, the status is controlled by the intention of the parties at the time of taking title, which may be ascertained by parol evidence of circumstances, contemporaneous declarations, and other relevant evidence.

**4. Husband and wife ⊙═⊃264—Evidence held to show intention for community ownership.**

In suit against a widow to recover an undivided fourth interest in land acquired by her and her husband during their marriage, evidence *held* to show that the parties at the time of acquiring title intended to provide for community ownership of the land.

**5. Husband and wife ⊙═⊃263—Subsequent transactions evidentiary as to intention.**

Subsequent transactions relative to property acquired by husband and wife cannot affect the status of the title as community, or vested in one or the other party, as such question must be determined as of time when deed was taken; but they may tend to show what the intention of the parties was with reference to the matter at time of taking deed.

---

⊙═⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**6. Witnesses ⬅159(3)—Testimony of widow that property was acquired by self and deceased husband for home admissible.**

In an action against a widow to recover an undivided fourth interest in land claimed by her to have been community property of herself and her deceased husband, admission of testimony of defendant widow that it was the intention of herself and husband to acquire the place for a home *held* not erroneous, as within the inhibition of Vernon's Sayles' Ann. Civ. St. 1914, art. 3690, as involving transaction with a decedent.

**7. Husband and wife ⬅274(4)—Status of property, as fixed by intention or agreements, admissible in suit by husband's heirs.**

Evidence of intention or agreements of husband and wife in acquiring land is admissible, in an action by the husband's heirs against the wife after the husband's death to recover part of the land, to determine the character of the ownership of the property, whether it was acquired partly as the separate property of the husband, or wholly as community property; the status of the land as thus fixed being binding on the husband and his heirs, and others dealing with the property with notice.

**8. Appeal and error ⬅1054(1)—No reversal for improper admission of testimony on trial to court without jury.**

The trial having been to the court without a jury, error in the admission of testimony *held* not to require reversal.

Appeal from District Court, Hemphill County; W. R. Ewing, Judge.

Suit by J. M. Cummins and wife against Hazel Cummins. From a judgment for defendant, plaintiffs appeal. Affirmed.

R. T. Correll, of Perryton, and F. P. Works, of Amarillo, for appellants.

Allen & Allen, of Perryton, and H. E. Hoover, of Canadian, for appellee.

BOYCE, J. This suit was brought by J. M. Cummins and his wife, against Hazel Cummins, to recover an undivided one-fourth interest in 158½ acres of land in Ochiltree county, Tex. The rights of the parties depend on the conclusion as to whether an undivided one-half interest in said land was the separate property of J. S. Cummins, deceased, or was part of the community estate of himself and his surviving wife, Hazel Cummins. The facts upon which the respective claims of the parties are founded are as follows:

J. S. Cummins and Hazel Cummins were married in October, 1916. In February, 1917, they acquired the 158 acres of land referred to. The consideration agreed to be paid for the land was the sum of $4,755, of which amount one-half was paid in cash, and consisted of funds the separate property of the said J. S. Cummins; the balance of the consideration was evidenced by three notes, executed by the said J. S. Cummins and Hazel

Cummins. The deed conveyed the land to J. S. Cummins and Hazel Cummins. The notes referred to were paid in part by community funds and in part by separate funds of Hazel Cummins. J. S. Cummins died in October, 1918, leaving no children. The plaintiffs are the father and mother of the said J. S. Cummins, and claim that an undivided one-half interest in the land belonged to the separate estate of their son, and that they were entitled to one-half of such interest by inheritance.

The defendant, Hazel Cummins, testified that, after her marriage with J. S. Cummins, she and her husband discussed the question of acquiring a home and the ways and means by which they might pay for it; that the purchase of this particular property was discussed, and it was understood that the husband could secure from his father the money with which to make the cash payment, and that they were to work together and try to pay the balance out of their earnings on the farm, but that, in the event these were not sufficient, then the wife's father would assist them, and furnish the funds necessary to meet such deferred payments; that nothing was said in these discussions as to whether the husband was to have any separate interest in the land, and there was no intention that whatever Mrs. Cummins might put in would be separate. The cash payment referred to was procured by way of advancement from the father of J. S. Cummins. The first note was paid before it was due, and before the husband's death. The greater part of this payment was made with money which Mrs. Cummins received from her mother's estate; the balance of the payment being with community funds. In reference to this Mrs. Cummins testified: "We just put it all together, after we were married, and we paid the first note." The second note was paid by Mrs. Cummins' father, at the request of J. S. Cummins; the other note was paid after the death of J. S. Cummins, by Mrs. Cummins.

The case was tried before the court, and judgment rendered for the defendant.

[1-5] Under the first three assignments it is asserted that under the undisputed facts a one-half interest in the land referred to belonged to the separate estate of J. S. Cummins, and would descend as such, and that the judgment based on a contrary conclusion, is without evidence to support it. The property having been acquired during the marriage relation, we must begin the consideration of the facts with the presumption that it is community property. Ordinarily, however, in the absence of any evidence of a contrary intention, the showing that a part of the initial payment constituted the separate property of the husband, would be sufficient to rebut the presumption that the property became the community property, and would require a holding that the husband owned a separate

interest in the property in the proportion that his separate funds entered into the payment of the consideration therefor. Love v. Robertson, 7 Tex. 6, 56 Am. Dec. 41; Smith v. Bailey, 66 Tex. 553, 1 S. W. 628; Letot v. Peacock, 94 S. W. 1121; McClintic v. Midland Grocery Co., 106 Tex. 32, 154 S. W. 1157; Dixon v. Sanderson, 72 Tex. 359, 10 S. W. 535, 13 Am. St. Rep. 801; Braden v. Gose, 57 Tex. 41; Cleveland v. Cole, 65 Tex. 406. But in such cases, except where the deed itself by express terms declares the status of the property, whether the property be conveyed to the wife or to the husband, or to them jointly, the status may be controlled by the intention of the parties at the time of the taking of the title, and this intention may be ascertained by parol evidence of surrounding circumstances, contemporaneous declarations of the parties, and other admissible evidence that would tend to show what the intention of the parties was at such time. Presidio Mining Co. v. Bullis, 68 Tex. 581, 4 S. W. 862; Higgins v. Johnson, 20 Tex. 394, 70 Am. Dec. 394; Dunham v. Chatham, 21 Tex. 245–247, 73 Am. Dec. 228; Smith v. Strahan, 16 Tex. 324–325, 67 Am. Dec. 622; Baker v. Baker, 55 Tex. 577; Peters v. Clements, 46 Tex. 124; Baldridge v. Scott, 48 Tex. 189; Wren v. Howland, 33 Tex. Civ. App. 87, 75 S. W. 899; Speer on Married Women, par. 378; R. C. L. vol. 5, p. 848.

Applying these rules to the facts before us, we believe such facts are sufficient to warrant the finding of the court that it was the intention of J. S. Cummins and his wife that the property acquired by and deeded to them, under the circumstances stated, should become their common or community property. It is presumed, as we have already seen, that all property acquired during the marriage is community property; and this is true, whether the title be taken in the name of the husband or the wife, or in their joint names. But the decisions recognize that the presumption is stronger in some cases than in others. Higgins v. Johnson, 20 Tex. 394, 70 Am. Dec. 394. It is said in this case that the husband rarely has property conveyed to the wife, or to them jointly, and that the presumption of community ownership, in case of conveyance to the wife, is not as strong as where the conveyance is to the husband. It has been held that where the husband purchases property with his separate funds, and has the conveyance made to his wife, this fact alone is sufficient to show an intention to make the property her separate property. Dunham v. Chatham, 21 Tex. 245, 73 Am. Dec. 228; Smith v. Strahan, 16 Tex. 314, 67 Am. Dec. 622. And it is said that in every case the fact that the conveyance is made to the wife has a tendency to show an intention that the property is for her separate use and benefit. Emery v. Barfield, 156 S. W. 313, par. 5. Reasoning along this line, is it not reasonable to say that, where the conveyance is to the husband and wife jointly, as in this case, the presumption is stronger that it was the intention that the property should belong to the community than it would be in case of a mere conveyance to the husband alone? Under the circumstances, we think the fact that the husband had the conveyance made to himself and his wife jointly is entitled to some weight, as determining the intention of the parties at the time and as indicating, in addition to the ordinary presumption, an intention to provide for a community ownership of the property.

We think all of the other facts and circumstances in the case tend to show that such was the intention in this case. The young couple were just entering into their married life. This property was being procured as a home, and as a means of providing a living for the family. It was discussed and understood that the parents of each would help them in their endeavor to secure a home for themselves. While the husband's parents furnished the first money that entered into the purchase, this was offset by the expectation that later other funds would be supplied by the wife from her inheritance from her mother, or by the wife's father, and it developed that this expectation was fulfilled. The wife's money was thereafter hotchpotched with community funds, without any understanding or intention that she should have any separate interest in the land or claim on it, and went to discharge the deferred payments, and the father did pay off one of the notes. While, of course, these subsequent transactions cannot affect the status of the title, as that is to be determined at the time the deed was taken, yet they may tend to show what the intention of the parties was with reference to the matter at the time of the taking of the deed (Smith v. Strahan, 16 Tex. 325, 67 Am. Dec. 622), and that there was no intention at that time that there should be any separate interests in favor of either in the property.

[6] The fourth assignment complains of the action of the court "in permitting Hazel Cummins, the defendant, to testify to agreements and understandings had between her and her deceased husband, and their plans and intentions, in regard to getting a home," on the ground that "they involve transactions with the deceased," and come within the inhibition of article 3690, Vernon's Sayles' Texas Civil Statutes 1914. It will be necessary, in order that our ruling on this assignment may be intelligible, that we copy the material portions of the bill of exception on which it is based. It is as follows:

"The defendant, Hazel Cummins, being on the stand, testifying in her own behalf, was asked by her counsel whether or not, prior to the time this land was acquired and notes given therefor, she and her deceased husband had ever figured with one another and talked about getting them a home. To which the witness

answered, 'Yes.' She was then asked to state to the court what agreement and understanding she and her husband had in their plans about how they would get a home. To which inquiry plaintiff's counsel objected, upon the ground that any such previous arrangements or discussion between defendant and her husband, as to how they might acquire a home, would not be binding on plaintiffs, and were especially objectionable, because they involved transactions with the deceased and were self-serving in their nature, which objections were by the court overruled, and the witness permitted to answer the question, which she did as follows: 'Well, yes; that is what was our intention when we got the place.' Plaintiff's counsel further objecting to statement of her intention," etc.

The only testimony in the statement of facts that sounds anything like the testimony referred to in the bill reads as follows:

"It was my and his intention to procure a home for the two of us."

This testimony was preceded by practically all of the testimony as to the details of the discussion between the parties prior to the purchase of the land. The bill is not intelligible, considered in connection with the testimony of the witness as it appears in the statement of facts. The answer to which the bill shows the objection was made is not responsive to the question, and so far as the bill discloses there is no objection to that part of the testimony which would have been in answer to such a question. If the testimony objected to, and referred to in the bill, refers to the testimony that it was the intention to procure a home for the two, and if the bill be considered as a valid objection to such statement, there would be no reversible error in its admission, because there is ample evidence in the testimony of the other witnesses and in the surrounding facts and circumstances to show that such was their purpose. This assignment will therefore be overruled.

[7] The fifth assignment is based on the claim that—

"The defendant and her husband could not by agreements, understandings, and intentions, to which plaintiffs were not parties, * * * change the separate interests of the said J. S. Cummins, deceased, in the property involved, and prevent plaintiffs from inheriting from him a one-half interest in such separate estate."

We have already cited numerous authorities which we think sustain the proposition that in a conveyance of this character evidence of the intention or agreements of the parties was admissible to determine the character of the ownership of the property, and the status of property as thus fixed would be binding upon the parties, their heirs, and any others dealing with the property with notice of such facts. The evidence does not of itself operate as a transfer of the title to the property by agreement, as in the cases relied on by appellant in support of these assignments. It merely gives character to the conveyance, and carries out the intention of the parties in the conveyance actually executed. Of course, if the conveyance itself should expressly declare the status of the title conveyed, then the evidence would not be admissible, in the absence of fraud or mistake to contradict the express recitals of the deed. Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825. The opinion in this case refers at some length to the decisions in which parol evidence as to the intention of the parties has been admitted to determine the status of the property conveyed to one of the spouses or to them jointly, during the existence of the marriage relation, and may be properly considered in connection with the decisions which we have already referred to in our discussion of the first three assignments.

[8] We doubt whether the evidence referred to in the sixth and seventh assignments was admissible. As we have stated, however, the trial was before the court without a jury; if there was any error in the admission of the testimony, it was not of such character as to require a reversal of the case.

The judgment of the trial court will be affirmed.

⊙⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes