**MANN et al. v. WHITE et al.    (No. 1860.)** *

(Court of Civil Appeals of Texas. Amarillo. Dec. 7, 1921. Additional Findings Made Jan. 17, 1922.)

**1. Specific performance ⊙▬121(3)—Evidence held insufficient to establish the claim of one defendant to the premises.**

In an action for specific performance *held* that evidence of one defendant, who claimed the land or an interest therein, against whom judgment was rendered, had failed to establish his claim, so that the judgment was proper.

**2. Vendor and purchaser ⊙▬59—Agreement held to show defendant was to receive all proceeds from a transfer subject to payment of certain items.**

In an action for specific performance, a contract, by its silence as to express reservations in favor of one defendant and by its express provisions as to the proceeds of sale to plaintiff, *held* to indicate that the parties intended that another defendant should receive all of the proceeds, subject to the agreement to pay certain items.

**3. Husband and wife ⊙▬262(1)—Note taken in wife's name in exchange for community land is presumed community property.**

That a husband merely exchanges community land for cash and a note taken in the name of his wife does not warrant the presumption that the note was intended to be made the wife's separate property, but it is presumed to belong to the community.

**4. Appeal and error ⚖️1073(7)—Party complaining of judgment must be damaged thereby.**

Where no judgment was rendered against one defendant for damages, but the judgment authorized plaintiff to retain part of the purchase price, which in effect required its payment by another defendant, the former defendant may not complain because not damaged.

On Motion for Additional Findings and for Rehearing.

**5. Husband and wife ⚖️264—Change in payee of note held insufficient to overcome presumption that property belonged to community.**

That defendants made a first contract for sale of lands in which a note was payable to the husband, and on making a second contract with the same party the note was made payable to the wife, *held* not of itself sufficient to overcome presumption that property belonged to the community.

**6. Appeal and error ⚖️930(3)—Judgment may be affirmed as to objection to decision on issue not submitted, or requested to be submitted.**

Where no issue as to the husband's intention in having a note given upon sale of community lands to his wife was submitted to the jury or requested by the appellants, if the evidence clearly presented such an issue, the judgment would be affirmed, in view of Rev. St. 1911, art. 1985.

**7. Husband and wife ⚖️264—Evidence held to show that note given to wife for community property belonged to the community.**

Where a husband transferred community land and had a note given therefor, made payable to his wife, *held* that the presumption that the property belonged to the community, and other facts tending to show husband's intention to retain control of the subject, at least until the consummation of the contract, warranted a determination that the note belonged to community.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Suit by J. P. White against Ed F. Mann and others for specific performance of a contract for the purchase of land. Judgment for the plaintiff, and Ed F. Mann and certain other defendants appeal. Affirmed, and opinion modified upon rehearing.

Vickers & Campbell, of Lubbock, for appellants Mann.

Bean & Klett, of Lubbock, for appellant Pershing.

L. C. Penry, of Fort Worth, and Roscoe Wilson and Percy Spencer, both of Lubbock, for appellees.

BOYCE, J. J. P. White brought this suit against Ed F. Mann, Mallie D. Mann, his wife, E. D. Henry, R. S. Pershing, and others to enforce specific performance of a contract for the purchase by White of 2,952 acres of Haskell county school land, situated in Hockley county, Tex. It was alleged that the contract was made between plaintiff White and the defendant Ed F. Mann, and that thereafter Mann conveyed the land to E. D. Henry, who bound himself to carry out the terms of the sales contract with White. These allegations of plaintiff's petition were established on the trial, and the real controversies in the case arose out of the claim of R. S. Pershing to an interest in the land or the proceeds thereof, and the claim of Mallie D. Mann and Ed F. Mann to a note that was to be given by White in part payment for the land. The judgment awarded a specific performance of the contract, and denied the claims of Pershing and the Manns, who have appealed.

The appellant Pershing pleaded his claim in two counts: First, in the form of trespass to try title, in which he claimed the entire land; second, he alleged that Ed F. Mann held the title to 3,985.2 acres of the Haskell county school land, including the 2,952 acres which were subsequently contracted to be sold to White, in trust for his (R. S. Pershing's) benefit; that he owned an undivided one-third interest therein; that Mann conveyed said 2,952 acres of the said land to Henry under an agreement whereby Henry bound himself to satisfy Pershing's claim in the 3,985.2 acres out of said 2,952 acres so conveyed to Henry; that Ed F. Mann had conveyed the remaining 1,033 acres of said land to his wife, Mallie D. Mann; that the contract of sale to White and conveyance to Mallie D. Mann were in violation of his (Pershing's) rights, and constituted an appropriation of his equitable interest in said land; that his said interest was of the value of the sum of $10,000, and he was entitled to have the same enforced as a claim against the 2,952 acres of land. The defendants Ed F. Mann and Mallie D. Mann replied to this answer and claim of R. S. Pershing that such claim had been adjudicated and settled adversely to Pershing, by a judgment rendered in the district court of Lubbock county, Tex., in cause No. 1280, entered on January 23, 1920, wherein the said Ed F. Mann and R. S. Pershing and others were parties. This plea of res adjudicata was sustained, and the claim of the defendant Pershing therefore denied. The facts necessary to a disposition of this phase of the case will be stated in the general statement, which will follow a statement of the pleading of the Manns' claim.

Ed F. Mann and Mallie D. Mann claim in their pleading a right to a portion of the proceeds of the sale to White of the said 2,952 acres of land, to wit, the sum of $7,380, to be evidenced by a note to be executed by the said White, and which they claim should be made payable and delivered to the

said Mallie D. Mann, and secured by a vendor's lien on said land, basing this claim on allegations to the effect that the original contract between Mann and White provided for the execution and delivery to the said Mallie D. Mann of such a note in part payment for the land, and that Mann subsequently conveyed the land to Henry under an agreement which required Henry to carry out such contract, which would include the securing and delivery to Mallie D. Mann of the note described in the original contract entered into between Ed F. Mann and J. P. White. Henry controverted this claim, and asserted that under the terms of the contract whereby he procured the title from Ed F. Mann he was entitled to all the proceeds of the sale of the land to White, subject only to the payment of certain specified items out of such proceeds. The jury's verdict was in favor of Henry on this contention, and judgment was entered, denying the claim of the Manns.

Haskell county originally owned four leagues of school land, which included the land in controversy, and sold it to Flynt & Morris, largely on credit, the deferred payments being secured by deed of trust on the land. Flynt & Morris in turn sold the four leagues of land to Ira J. Hoover, who assumed the indebtedness due the county, and executed second lien notes in part payment therefor. R. S. Pershing claimed to be entitled to commissions aggregating about $11,000 for services in procuring said sales, and which he claimed were chargeable against the land in the hands of Hoover. E. D. Henry claimed to have acquired the second lien notes and to have pledged them to Gus J. Groos, and that he had advanced on said notes sums of money aggregating something over $39,000, and that he was entitled to foreclose said lien on said land to secure repayment of said money to him. Default was made in the payment of the indebtedness to the county, and it foreclosed at trustee's sale, bought in the property, and subsequently sold it to Ed F. Mann, who thereafter conveyed all of the land except the 3,985.2 acres to E. W. Miller. Charges of fraud and irregularity in the foreclosure by the county and the subsequent sale of the land to Mann and Miller were made, and several suits were filed by the interested parties in an attempt to save themselves from the effect of the foreclosure. The only one of these suits that requires particular reference in this statement is cause No. 1280, filed in Lubbock county, and referred to later. In March, 1917, Ed F. Mann executed an instrument, in which he recited that he was holding the title to the 3,985.2 acres of land for the benefit of R. S. Pershing, H. C. Flynt, and J. J. Parker, subject to the payment of certain sums of money to Mann and G. C. Davis. It is not necessary

236 S.W.—50

to set out this agreement in full, because we think it was unquestionably superseded by an agreement entered into between said parties on the 7th day of June, 1917, and upon which last-named agreement Pershing, in our opinion, must rely to sustain his claim in this suit. By this agreement of June, 1917, Mann acknowledged that he held the title to said 3,985 acres of land in trust for the benefit of "the interested parties," Pershing, Flynt, and Parker, and it was agreed: That Mann was entitled to an equitable lien on the land for the sum of $8,069, subject to the balance due Haskell county, and a deed of trust lien in favor of G. C. Davis, for $1,000; that said lands should be sold as soon as title to the same was cleared, at a price mutually satisfactory to all of said parties, and out of the proceeds thereof Mann should be paid the said sum of $8,069, etc. In June, 1918, Pershing agreed to assist Henry in an effort to have the county's foreclosure sale and the subsequent sale to Mann set aside, and to furnish evidence of invalidity of the trustee's sale. According to the findings of the jury it was agreed between Pershing and Henry at this time that said parties would divide the net proceeds of land recovered by such joint undertaking, after payment of all expenses incident to any litigation brought for such purpose, in the ratio of 11/50 to Pershing and 39/50 to Henry. In pursuance to this agreement suit No. 1280 was filed in Lubbock county, Tex., wherein Gus J. Groos, whose name Henry was using, E. D. Henry and others were plaintiffs, and Haskell county, Ed F. Mann, Ira J. Hoover, R. S. Pershing, H. C. Flynt, J. J. Parker, and others were defendants. During the pendency of this suit Ed F. Mann entered into the contract with J. P. White, which is sued on by White in this case. By the terms of this contract Mann agreed to sell to White said 2,952 acres of land, and White agreed to assume payment of the amount due Haskell county and to pay $5 per acre "bonus," $7,380 cash, and $7,380, to be evidenced by a vendor's lien note of even date with the deed, executed by Mann when the contract was closed, and which note should be payable to the order of Mallie D. Mann, one year after date, etc. Said contract referred to the pendency of said suit by Gus J. Groos and others, and provided that Mann should clear up the title before said contract of sale was consummated. Cause No. 1280 came on for trial, and while the trial was in progress a compromise agreement was made between Henry on the one part and E. W. Miller and Ed F. Mann on the other part. In pursuance to this agreement judgment was entered that the plaintiffs recover nothing by their suit; that the defendant Ed F. Mann be quieted as against the plaintiffs and all other parties to the suit in his title and possession of the

3,985 acres of land, and that "as to said land so adjudicated to the said Ed F. Mann all right, title, and interest of, in, and to said lands be and is hereby divested out of the plaintiffs and all other parties to the suit and vested in the said Ed F. Mann." A similar judgment was rendered in favor of the defendant E. W. Miller as to the balance of the four leagues of land. Pershing did not file an answer in the suit and in the preliminary recitals of the judgment it was ordered that the plaintiffs have judgment by default against said defendant for the recovery of the title and possession of the said Haskell county school lands. In sustaining the plea of res adjudicata in this suit the court found that "R. S. Pershing was present in said court and consented to the entry of said judgment in said cause No. 1280." Said judgment was entered as if it had been the result of a completed trial. At the time of the entry of the judgment and as a part of the compromise agreement under which it was entered the defendant E. W. Miller conveyed to E. D. Henry 5,722 acres of the land awarded to him in the judgment, and Ed F. Mann conveyed to E. D. Henry the 2,952 acres of land which Mann had contracted to sell to White. Mann and Henry agreed in connection with the conveyance by Mann to Henry that Henry would carry out Mann's contract with White by executing the necessary deeds, and out of the proceeds of the sale of the land would pay certain specified sums of money, aggregating $8,811, to various parties particularly named, and Henry also agreed "out of the sale of said land to satisfy any valid claim of R. S. Pershing" to the 3,985-acre tract. On January 20, 1920, three days before the entry of the judgment in said cause No. 1280, and the execution of the deeds in connection therewith Ed F. Mann conveyed to Mallie D. Mann 1,033 acres of land, being all of the 3,985 acres of land recovered by him, except that conveyed to Henry. Prior to the filing of this suit by White for specific performance, which is cause No. 1383 on the docket of the district court, Pershing had filed a suit in the district court of Lubbock county, being No. 1336, against E. D. Henry, wherein he sought to enforce his claim under the Fort Worth agreement, to 11/50 of the 2,952 acres of land involved in this suit, as well as the 5,782 acres deeded by Miller to Henry. Said cause No. 1336 was tried with this suit, and is now on appeal in this court, being cause No. 1859 herein, this day decided.

[1] We agree with appellant Pershing's contention that the judgment in cause No. 1280, the deeds executed by Miller and Mann to Henry, and the agreements made in such connection, are all part of one transaction and the rights of the parties to be determined from a consideration of all of said instruments as a whole. So regarding them, we doubt whether the judgment cut off "any valid claim of R. S. Pershing" to the 3,985 acres of land; but certainly it did not establish a claim, but left E. D. Henry to contest the validity of any claim which Pershing might assert or settle it upon any terms that he might arrange with Pershing. The effect of the whole transaction was a recovery in this litigation of these two tracts of Haskell county school land, deeded to Henry by Miller and by Mann. These lands are the result of the undertaking in which Henry and Pershing agreed to jointly engage, and, as already stated, Pershing is claiming, and we have upheld such claim, that they are held by Henry, subject to the Fort Worth agreement for such acquisition. Now that agreement contemplated the destruction of all claims of Mann and those holding under him in whatever might be acquired by the parties in the undertaking. It also contemplated a merging of any prior claims of both Henry and Pershing against the land into what might be procured by the litigation and a division between the said parties of what was so procured regardless of what might have been their previous claims therein, in the agreed proportion of 39/50 to Henry and 11/50 to Pershing. Pershing himself testified as to such matter:

"With reference to any understanding or agreement I might have had with E. D. Henry covering any claim or interest that either of us might have had or might acquire in the land involved, will say that in June, 1918, I had a conference with Mr. E. D. Henry in the office of L. C. Penry at Forth Worth, concerning certain information that I had in my possession to assist him in recovering the land involved in this suit against Mr. Miller and Mr. Mann. Mr. Henry stated to me that in consideration for my assistance in recovering this land he would recognize any existing claim of myself on the same basis as his claim. He claimed he had $39,000 in this land, and I had a claim of $12,000; that he would recognize my claim on that basis and whatever we might recover would be divided between us on that basis."

Again he testified as to the same transaction:

"Yes; it was discussed as to that part held out from Haskell county that there were 3,900 and some odd acres held out in the name of defendant Mann, in which Flynt and Parker and myself were interested. Yes, sir; that was the thing discussed, that if Henry recovered in his suit, that that would necessarily mean the cancellation of the claim of the defendant Mann and that would wipe out me and Parker and Flynt."

The effect of this agreement of June, 1918, between Pershing and Henry was that any previous claims they might have against the land would be satisfied as between them by the division in the proportion agreed upon. So when Henry acquired this land its holding by him was controlled by the previous

agreement between him and Pershing as to its acquisition. Of course Pershing and Henry could have changed the terms of this agreement and have made the holding of any lands so acquired subject to different terms, but we see nothing in the agreement between Henry and Mann to require a finding that it was agreed between Pershing and Henry that such previous agreement between Henry and him would be thereby modified so as to require Henry, not only to allow Pershing a 11/50 interest in such recovery, but in addition allow his claim under Mann. It seems entirely probable that Mann was not acquainted with the agreement between Henry and Pershing, and it was natural that for his own protection he would require an agreement from Henry to protect him against Pershing's claim. But, as we have said, Henry already had an agreement with Pershing, the effect of which was to provide how Pershing's previous claims to the property under Mann were to be satisfied, to wit, by being merged into the claim for a 11/50 interest under the Fort Worth agreement. All these facts were shown on the trial, and under them we think the court should have denied the claim of Pershing, as set up in his answer. So, if there was any technical error in sustaining the plea of res adjudicata, the facts were fully developed, and we think that Pershing failed to establish his claim to any interest in the land under the Mann agreement, and the judgment was properly rendered against him on this claim. His claim under the Fort Worth agreement is being litigated in another suit, as stated, and conclusions with reference thereto are announced in cause No. 1859, above referred to.

[2] The contention made by the appellants Mallie D. Mann and Ed F. Mann that Mrs. Mann is entitled to the note for $7,380 to be executed by White, in part payment for the 2,952 acres of land, is based on two propositions: (1) That the proper construction of the contract between Mann and Henry, made at the time that Mann conveyed the land to Henry, entitles Mrs. Mann to this note; (2) that the provision in the contract between Mann and White for the execution of the note to Mrs. Mann created a claim which would be the separate property of Mrs. Mann, and that Ed F. Mann could not thereafter change this contract and deprive his wife of the benefit thereof without her consent, which it appears was not given. The conveyance of the land from Mann to Henry conveyed every right and interest therein held by Mann not expressly or by clear implication reserved. It, of itself, we think would have entitled Hanry to the proceeds of the sale to White when it should be consummated. The note, when executed, would have constituted a lien on the land. This note, as we later hold, would have been the community property of Mann and wife,

so that if Mann is entitled to this note it constituted a charge on the land in his favor which could not be held to exist in the face of his conveyance of the fee-simple title to the land, unless there were some agreement to reserve it from the effect of the conveyance of the land itself. The deed itself conveys the land without reservation, except subject to the indebtedness due Haskell county. The contract, executed contemporaneously therewith, provides that Henry shall carry out the White contract by executing necessary deeds of conveyance to White. It does not expressly say that Henry shall receive the proceeds of the sale of the land, but that is the necessary implication from some of the express provisions thereof. It was expressly agreed that Henry should, "out of the proceeds of the sale of the land," pay the Lubbock State Bank $5,811 and R. L. Parker and H. C. Flynt each $1,000, and also "out of the sale of the land" pay to G. C. Davis $1,000, and in addition "satisfy any valid claim of R. S. Pershing." The aggregate of these items largely exceeded the cash payment of $7,380, and there were no other proceeds of the sale of the land except that to be evidenced by the note in question. So the contract, both by its silence as to express reservations in Mann's favor and by its express provisions as to the proceeds of the sale to White, clearly indicates that it was the intention of the parties that Henry should receive all of such proceeds, subject to the agreement to pay the above-mentioned items out of the same. No other conclusion could, we think, be sustained, and it does not become necessary to call to its aid the oral testimony of the witnesses that this was the undertaking between the parties at the time of the making of the contract. So we need not discuss appellants' assignments as to the admission of such evidence.

[3] We also overrule the other contention that the contract creates a claim in behalf of Mrs. White's separate estate. The question as to whether the note, when executed would have been the community property of Mann and wife, or the wife's separate property, is to be decided on presumptions arising from the provisions of the contract itself as there is no other evidence as to the intention of the parties. We start with the presumption that all property acquired during the marriage relation belongs to the community. The 2,952 acres of land which Mann agreed to sell to White was therefore community property. The presumption also is that a note payable to the wife belongs to the community. Wells v. Cochrum, 13 Tex. 127. But it is contended on the authority of Roberts v. Prather, 158 S. W. 789, that the transaction amounted to an assignment of, or an agreement to assign, the note from Mann to his wife. If such was the effect of the agreement we think it is probably true that the note would become the separate property of

Mrs. Mann. It has long been held that when the husband conveys land to the wife, belonging to the community, with the title in his name, it is to be presumed that the land thereby becomes the separate property of the wife. The reason assigned for this holding is that it is presumable that it was the intention that the deed executed under such circumstances would have some effect and if the deed made no change in the ownership of the property its execution would be useless and meaningless. Story v. Marshall, 24 Tex. 306, 76 Am. Dec. 106. So it may be true that if the husband should assign to the wife a note already executed and in his name, a presumption would arise from this act that it was the intention to make the note her separate property. But that is not the case here. The note never stood in the name of the husband. He has made no transfer or assignment which would be useless and vain if the purpose to change the title be not imputed to it. Mann here merely exchanges so to speak community property in the form of land for a certain amount of cash and this note, taking the title to the note in the name of the wife. The transaction is analagous to those cases where the husband buys land with community property and takes the title in the wife's name, it being held in such case in this state that the property so acquired belongs presumptively to the community (Higgins v. Johnson's Heirs, 20 Tex. 389, 70 Am. Dec. 394; Clopper v. Sage, 14 Tex. Civ. App. 296, 37 S. W. 363); or to the case where the husband deposits money belonging to the community to the credit of an account in the wife's name, in which case it is held that the presumption is that the funds remain the property of the community. Wellborn v. O. F. B. & E. Co., 56 Tex. 501. These authorities, and others that might be cited to the same effect, establish the principle of law in this state (it may be different elsewhere) that the fact that the husband causes the title to property acquired by him in the management of the community estate to be taken in the name of the wife does not of itself warrant the presumption that such property was intended to be made the separate property of the wife. The presumption is otherwise. It may be a circumstance to be considered with other evidence as to such intention, but is not of itself sufficient. We think this case is controlled by these principles and is clearly distinguishable from that of Roberts v. Prather, supra. This decision as to appellants Mann's two principal propositions renders it unnecessary to consider other propositions advanced by appellees in support of the judgment against them.

[4] The contract between Mann and White provides for possession of the land by White after September 14, 1919, pending the clearing of the title, and he sought in his peti-tion damages on account of the possession not having been delivered until May 1, 1920.

On the trial his damages for breach of this term of the contract were assessed at the sum of $922.50. No judgment was rendered against Mann or any one else for a recovery of such damages, but the judgment authorized White to retain such sum of money out of the consideration to be paid by him for the land. The appellant E. D. Mann assigns error in reference to several of the proceedings concerning the trial of this issue and the assessment of this amount of damage. We do not think he is in position to urge these assignments. Royal Neighbors of America v. Fletcher, 230 S. W. 476 (10). The abatement of the purchase price to be paid by White in effect requires the payment of these damages by Henry, and the said Henry does not complain of the judgment in this respect.

We find no reversible error, and the judgment will be affirmed.

### On Motion of Appellants Mann for Additional Findings and for Rehearing.

In response to the motion of Ed F. Mann and Mallie D. Mann, for further findings of fact we make the following additional statement:

I. Ed F. Mann and J. P. White entered into two contracts for the sale of this land to White. The first contract was dated July 20, 1919; the second contract, the one sued on, was dated August 13, 1919. The following points of difference between the two contracts are noted: (1) The first contract provided for a cash payment of $4,760 and two notes for $5,000 each, payable to Ed F. Mann, while the second contract provided for a cash payment of $7,380, and execution of one note for $7,380, payable to Mallie D. Mann. (2) The second contract contains a reference to the pendency of the suit by Gus J. Groos et al. v. Ed F. Mann, being suit No. 1280, referred to in the original statement and in this connection it was agreed that it was necessary, for Mann to clear the title of the cloud cast upon it by said suit, and it was further agreed that pending the clearing of such title White should go into possession of the property and in consideration for such possession and use pay the annual interest due Haskell county thereon. The first contract contained no such provisions. (3) The second contract provided for the conveyance by Mann to White of an additional tract of land, not referred to in the first contract.

II. The first contract was canceled by agreement, and each party executed written releases thereof to the other. It is to be inferred that the reason for this action was the complication in the title, caused by the pendency of said suit No. 1280. Later Mann renewed the negotiations, which resulted in the execution of the second contract. When Mann and White were instructing the at-

torney how to draw this contract, and mention of the note to be executed by White was made Mann said, "Make that note payable to Mrs. Mann," and this was all that was said about it. Mrs. Mann was present during some of the negotiations for the sale, and took some part in them, though it does not appear just when she was present, and she was not present at the time the contract was drawn and executed.

III. Mann executed notes to Haskell county for the purchase price of the land and secured their payment by deed of trust. He conveyed the respective tracts of land mentioned in the original opinion to Miller and to Henry, respectively, by warranty deeds, subject to the indebtedness due the county.

IV. The compromise agreement between Henry and Mann and Henry and Miller was made at the same time, and in that sense are parts of the same transaction, but the evidence shows that the negotiations were conducted separately and different figures and considerations entertained by the parties in arriving at the separate agreement between the respective parties. There is evidence to the effect that in the negotiations between Mann and Henry it was estimated by the parties that Henry, after paying all the amounts provided for in the contract between them, would have left "somewhere between $5,000 and $5,500," and that it was understood that—

"Henry would get the White note. That was the basis of the computation and basis of settlement."

[5] Appellants, in their motion for rehearing, lay much stress on the fact of the execution of the first contract between Mann and White, and that the second contract made a change in the payee of the note to be executed by White; the contention being that the execution of the second contract thus indicated a purpose to change the ownership of the note in question. It does not appear that the second contract was substituted for the first. The first contract was rescinded, and negotiations entirely abandoned, presumably on account of the complication in Mann's title to the land. The second contract was executed on renewal of negotiations, and a number of its provisions differed from those of the former contract, so that it is to be regarded as an entirely independent contract. If the first contract had been merely changed for the purpose of making a change in the payee of the note, such fact might tend to materially strengthen the contention that it was Mann's intention to make the note his wife's separate property. But, as we have stated, this was evidently not the primary purpose of the parties. As we stated in the original opinion, the very fact that Mann proposed to take the title in the name of the wife has some tendency to indicate an intention to make the property her separate property. Cummins v. Cummins, 224 S. W. 904, and authorities. But this fact is not of itself sufficient to overcome the presumption that the property was community property, and we do not think the facts as to the execution of the first contract, and then later the second, furnish the additional testimony that is required to justify a finding of such an intention.

[6, 7] But appellants' assignments do not require us to go this far. These appellants requested a peremptory instruction in Mrs. Mann's favor, and moved for judgment on the verdict of the jury on the theory that it was conclusively shown that the contract created a separate interest in favor of Mrs. Mann, and their assignments are based on the claim of error in the denial of appellants' position in these matters. No issue as to Mann's intention was submitted to the jury, and none requested by appellants. If the evidence merely presented an issue as to the intention of Ed F. Mann, we should affirm the judgment on the ground that the court would have been authorized to find on such issue in the absence of a request for its submission. R. C. S. art. 1985. If it be true that the facts we have detailed are sufficient to indicate an intention to vest a separate interest in the property in Mrs. Mann, we do not think that it could be held that they conclusively show such intention. In addition to the general presumption that the property was community, there are other facts that have a tendency to show that the husband's intention was to retain control of the subject, at least until the consummation of the contract. The contract itself was executory, and much else remained to be done by the husband thereunder before it could be consummated. His subsequent act in disposing of the note has some tendency to indicate his original intention as to the status of the property. Smith v. Strahan, 16 Tex. 325–326, 67 Am. Dec. 622; Cummins v. Cummins, 224 S. W. 905. We, therefore, hold to our original conclusion that these assignments should be overruled.

If the facts required a finding that it was the husband's intention to make a gift of the property to his wife, a serious question would remain as to whether the gift was so executed and accepted as to be irrevocable, but the conclusions already reached render it unnecessary to consider such question.

The motions, except in so far as they are sustained by the additional statements herein made, are overruled.