## PERSHING v. HENRY.  (No. 1859.)*

(Court of Civil Appeals of Texas. Amarillo.
Dec. 12, 1921.  Rehearing Denied
Jan. 4, 1922.)

1. **Joint adventures ⬉4(1)—Beneficial interest of one declared in lands deeded to another in furtherance of joint enterprise.**

In trespass to try title for an interest in lands, title to which defendant had taken in his own name under an agreement prior to defendant's deeds, *held*, that plaintiff's agreement to furnish testimony at another trial involving the lands to show that a trustee sale was invalid was not the sole consideration of an agreement that plaintiff was entitled to share the lands, and that if such condition was made it was abandoned by defendant, and that plaintiff's surrender of his interest in the lands prior to the deeds of defendant and defendant's recognition at the time of the trial of the agreement between him and plaintiff created a charge on the lands and gave plaintiff a beneficial interest.

2. **Trusts ⬉1—Distinction between charge on land and a trust.**

In case of a charge upon land, the land is vested in the beneficiary for his beneficial enjoyment, subject to the payment of a particular sum or the performance of a particular duty, while in a trust the conveyance is limited to a particular purpose.

3. **Trusts ⬉179—Trustee must act with scrupulous good faith with beneficiaries interest.**

A trustee is required to act with absolute and most scrupulous good faith in dealing with the interest of a beneficiary.

4. **Joint adventures ⬉4(1)—Execution of mortgage by holder of land belonging to joint enterprise held breach of trust creating personal liability.**

In an action to have a beneficial interest declared in lands held by deed by one of the parties to a joint enterprise, *held*, that the execution of a mortgage on the lands by the holder was a breach of trust, and the trustee incurred a personal liability at the election of the beneficiary.

Appeal from District Court, Lubbock County; W. R. Spencer, Judge.

Action by R. S. Pershing against E. D. Henry. From a judgment for defendant, plaintiff appeals. Judgment reformed, and cause remanded for accounting and adjustment of equities.

Bean & Klett, of Lubbock, for appellant.
L. C. Penry, of Fort Worth, and Percy Spencer, of Lubbock, for appellee.

HUFF, C. J.  The appellant, Pershing, sued Henry in one count of his petition in trespass to try title for $12/51$ in certain designated subdivisions of land out of the Haskell county school lands, and in his second count he alleged that appellee, on January 23, 1920, took a deed to the land described in the petition and held the legal title in his name under an agreement made prior to and at the time of the execution of such deeds; that appellant should have $12/51$ of the land sued for; that the deed was made to Henry to hold in trust and for the convenience of the parties, but that appellant was the beneficial owner of such interest in the land by virtue of a prior oral agreement; that the title thereof was involved in the suit of Groos v. Hoover et al., and that a compromise and adjustment of the conflicting claims involved in the suit resulted in a judgment being entered in pursuance to an agreement made out of court, whereby the legal title was placed in Henry by deeds, with the agreement and understanding that appellant was the equitable beneficiary of the interest set out in the petition; that it was part of the agreement that Henry would deed to appellant such interest as soon as partition could be made or an accounting otherwise satisfactory had; that appellee still holds the land as trustee, but refuses and fails to account to appellant therefor or deed him his interest; that the market value thereof was about $20 per acre, in which sum appellant alleged he had been damaged by the conduct of appellee in appropriating the land and proceeds thereof and in a refusal to account to appellant therefor. The prayer is for title and possession of his interest, for partition, and, if this could not be done, that he have judgment for the value thereof with a lien fixed against the land and a foreclosure thereof, etc. The appellee answered by general denial, not guilty, and as by way of cross-action for title and possession, of the land.

This case was submitted and tried with the case of White et al. v. Ed. F. Mann et al., which case is on appeal in this court under No. 1860, Mann v. White, 236 S. W. 783. The facts set out in that case, in so far as they are material to this case, will be adopted. The cases were submitted on special issues, and those relating to this case, and upon which judgment was rendered, are, with the jury's answers, as follows:

"(2) Did R. S. Pershing agree with E. D. Henry that he would furnish, upon the trial of the suit of Gus J. Groos v. Ira J. Hoover et al., testimony showing that the trustee's sale by Haskell county was invalid? Answer: Yes.

(3) Did R. S. Pershing fail to furnish for said trial said testimony? Answer: Yes.

(4) Did R. S. Pershing agree, at Fort Worth, Tex., with E. D. Henry, that all expenses incident to the proposed litigation would first be paid before any division was had between E. D. Henry and R. S. Pershing? Answer: Yes.

(5) Was it the understanding between E. D. Henry and R. S. Pershing, at Fort Worth, Tex., that any division between them was to be made out of the net proceeds of land recovered

by their joint undertaking, if any, at the ratio of 11 to 39? Answer: Yes."

The court, upon these findings, rendered judgment for Henry for the entire interest in the land sued for, describing it, decreeing that—

"E. D. Henry do have and recover of and from the said R. S. Pershing the title and possession of the land described in plaintiff's petition herein, and that he be quieted in his title as against all manner of claims of the said R. S. Pershing in and to said land."

Pershing, the facts show, claimed to have earned commissions due to him from Morris & Flynt in the sale of the Haskell county school land to them and for services rendered them, and also commissions on other sales from them to Hoover, for which he had instituted suits and in one case had sued out an attachment and perhaps in another filed lis pendens notice. Henry's claim was for money loaned to Morris & Flynt to pay the annual interest due Haskell county on the school land purchased, which he claims amounted to $39,000. The facts show in this case that, after Henry had loaned the money to Morris & Flynt, in order to secure him and as one of the grounds of the sale, Morris & Flynt conveyed the land purchased from Haskell county to Hoover, who executed his note to Flynt for $53,000. This $53,000 note was delivered to Henry as collateral security on the advances made by him to Morris & Flynt, and it appears that he secured money on this note from Groos, to whom he turned over the Hoover note and who held that note. After Hoover became the purchaser of the Haskell county school land the evidence shows he defaulted in the interest payment due the county, and the county, exercising its option, declared the entire indebtedness due, and under the powers of a deed of trust sold the land at trustee's sale and bought in the land for the county. After the county bought in the land at trustee's sale it seems that they made some order to again sell the land to Hoover, but for some reason they did not carry out this order and make the sale to Hoover, but the order was canceled and an order made to sell the land to Ed. F. Mann, who purchased the land at $10 an acre. The evidence is not very clear, but it seems to have been the understanding that Mann would pay the interest due the county upon which Hoover had defaulted. At any rate, Mann sold to E. W. Miller all but 3,985.2 acres, which he retained in his own name, and it seems that Miller paid the county the interest for which Hoover had defaulted, and in addition paid Mann something like $40,000. This $40,000 or more paid by Miller seems to have been divided up at that time between several parties, upon which there is a suggestion in this record of its questionable character, but which is not a direct issue in this

case. After the sale of the land to Mann and Miller it seems that Hoover brought one or more suits assailing the sale of the county to Mann and Miller, and finally, by some sort of settlement or payment made to Hoover, he abandoned further effort to recover the land or set it aside. After this sale to Mann and Miller it seems that Pershing and Henry had concluded that the trustee's sale by the county cut off their opportunity or chance to recover, the one the money he claimed as commission, something over $11,-000, and the other $39,000 advanced, or the $53,000 note executed by Hoover, which was a second vendor's lien note on the school land; and that finally a conference was had between Henry and Pershing in the office of Penry & Penry at Fort Worth, by which they reached an agreement, the substance of which is as found by the jury, and the testimony is sufficient to support the finding of the jury on the agreement made in Penry's office. After entering into this agreement Mr. Henry, through Gus J. Groos, brought suit against Miller, Mann, Pershing, Flynt, and others, challenging their title and seeking apparently to establish the lien against the land for the $53,000 note executed by Hoover. The issues made in that case are not brought up in this record, but it appears that after they had gone into trial Mann and Miller made a proposition to Mr. Henry to compromise the litigation, which was done by Miller and Mann taking judgment for the land as against all the other parties to the suit and thereafter contemporaneously, Miller deeding to Henry 5,722 acres, consisting of several subdivisions of the Haskell county school land, giving the number, and Mann recovered judgment in that suit for 3,985 acres of land, consisting of several subdivisions, giving the number, and out of that amount of land Mann conveyed to Henry 2,952 acres. This conveyance by Mann to Henry is fully set out in the case of White v. Mann, handed down with this case. As is shown in that case, Henry undertook to carry out Mann's contract with White and to convey to White the land so received in the partition, or so deeded to Henry by Mann.

There is some controversy in the testimony of Pershing and Henry as to what testimony Pershing was to furnish upon the trial establishing their joint interests as against Mann and Miller. Pershing intimates, or in effect testifies, that in some way in the trade or in the sale of the land to Mann and Miller by the county there was bad faith on the part of certain officials of Haskell county and the parties purchasing the land, which might render that sale invalid, and that he was in possession of facts or had knowledge of facts which he could make accessible to Henry. On the other hand, Henry and his attorney seem to contend that in the trustee's sale by Haskell county the powers of the trust deed

were not pursued, in that the trustee named in the deed was requested not to sell and that a substitute was appointed, without the named trustee being in fact requested to make the sale. Just what particular fact or testimony Pershing agreed to furnish the record does not disclose. The record does show that Pershing was present at the trial of Groos v. Hoover et al., at the Lubbock court when the compromise was had, and that he had gone there in answer to a telegram requesting his presence; that he had agreed previous thereto, when wired, that he would attend the court. The testimony indicates that Henry and Pershing were dependent upon obtaining testimony from the former county judge of Haskell county, and possibly the county treasurer and county attorney, with reference to the trustee's sale. It is shown that the former county judge and county attorney were assisting Mann and Miller in the defense of the suit of Groos v. Hoover, Mann, and Miller, at Lubbock, and that their names were signed to the pleadings. There is some intimation that an affidavit had been obtained from the county judge previous to that time, but the nature of the affidavit is not stated, or what became of it, or whether they had it at the trial. There seems to have been another witness, Flynn, who was in Chicago, or out of the state, at the time of the trial, from whom they expected to obtain testimony, and that he was not at the trial. It is shown, however, that Pershing was at the trial and rendered such assistance as he could with reference to the trial and with reference to the compromise that was afterwards effected in giving information with reference to the values of the land and its situation, etc.; that he had also made a trip to see some of the witnesses, at the request of Mr. Henry, who paid part of the expenses, and he paid part. Under the agreement at Fort Worth, Mr. Henry was to pay the expenses. His testimony on that point is as follows:

"I said I had an understanding in Mr. Penry's office at Fort Worth that I was to share my claim pro rata—our claims on ratio of 11 to 39, less the expenses. When the expenses were paid the remainder was to be divided on the ratio of 11 to 39. I had nothing to do with Mr. Bettis. They did not include the personal expenses of anybody. The character of expenses I refer to are the expenses of carrying on the litigation, money expended for court costs, hotel bills, and traveling expenses of attorneys and attorney's fees, and all the general expenses incident to carrying on the litigation, except personal expenses. It was agreed that I was to incur the expense and hire the help, but if Mr. Pershing did incur any expense it should come out. I don't know that I agreed to it then, but I agree to it now. I can't figure out until that land is sold and all the expenses cleared up how much Mr. Pershing is entitled to. Every item of those expenses is down on the books. That record is in my office at San Antonio. I did not expect to make an account and show of the expense I had incurred when I came up here to this trial. We are not ready for an accounting nor ready for a settlement."

The record in this case shows that Pershing had an undivided one-third interest in the 3,985.2 acres held in the name of Mann under the sale made by Haskell county to Mann, above mentioned. This interest seems to have been subject to some indebtedness against the acreage, and this interest was owned by Pershing at the time he entered into the contract with Mr. Henry at Fort Worth, and was never surrendered by him until the compromise of the suit at Lubbock, above mentioned. A judgment was taken against Pershing in that suit by default. This interest was evidenced by a written contract between Mann and Pershing and some other parties, and in the settlement made at the Lubbock court of the suit then pending it was agreed between Mann and Henry that Henry should settle for any lawful interest that Pershing had in the land decreed to Mann in that judgment and conveyed to his wife and to Henry. Mr. Henry, while on the witness stand, testified that the judgment taken at Lubbock county January 23d and the deeds and contracts of that date referred to above were all parts of the same compromise settlement, stating:

"This general suit against Miller and Mann was then pending here in Lubbock county. The whole litigation was compromised together. Both of them did agree to it before the litigation was over. It was my idea that all the papers connected with the settlement should be considered as having been executed at the same time. My understanding of the transaction is that is that it was the same deal and the same contract, and that the compromise was with Miller and Mann."

He also testified on this trial:

"I still recognize the interest of Mr. Pershing. I made a contract and I will carry it out. I never made a contract that I would not. The agreement I reached with Mr. Pershing in Mr. Penry's office at Fort Worth is just as sacred to me as it was then, and will be carried out by me, regardless of the result of this suit. Whatever profit is got out Pershing and I will divide in accordance with our original contract of 11 to 39, as far as I am concerned."

On April 12, 1920, Henry wrote to Pershing, apparently in answer to an inquiry, with reference to the amount of money that he should receive from Mr. White on the purchase of the land obtained from Mann in the compromise suit, explaining that he had been unable to get Mr. White to accept the title, etc., and in that letter he stated:

"Before any distribution of our division of the property can be made or will be made by me, all expenses pertaining to the handling of this situation, from its inception to the final

close, must be paid. After the payment of these expenses, then the balance of the property or funds will be divided in accordance with our agreement in Mr. Penry's office."

Again he said in that letter:

"As soon as we are able to make this adjustment or settlement and dispose of this property I am perfectly willing that you shall have all that portion agreed upon by us."

The record in this case shows that the day after the judgment was entered and the compromise effected at Lubbock Mr. Henry executed a mortgage with power of sale to Gus J. Groos, to secure a note of $39,500 executed by him, and placed it upon the land that had been deeded to him by Mr. Miller, together with some other lands in Southwest Texas. This, perhaps, will be a sufficient statement for the purpose of discussing the issues presented on this appeal. It may be necessary to refer to other facts in discussing the case.

The appellant in this case presents two assignments of error: The first, that the trial court erred in refusing to render judgment for the value of his equitable and beneficial interest as found by the jury in the land in controversy, for the reason that Henry had repudiated his trust; and, second, the trial court erred in refusing to render judgment for R. S. Pershing for his interest in the land in controversy, in that the findings of the jury and the undisputed evidence show that at all times Henry was acting as trustee for Pershing, and that Henry had repudiated said trust and appropriated said land and the proceeds thereof without his consent.

[1, 2] We will notice first the apparent contention of appellee based on the finding of the jury to the effect that Pershing agreed to furnish testimony showing the trustee's sale by Haskell county was invalid in the case of Groos v. Hoover, and did not do so, and that this defeated his equity. In the first place, there was no plea that there was a failure of consideration for the contract in favor of Pershing in the enterprise. Again, furnishing the testimony by Pershing does not appear to have been the only consideration for the agreement. Pershing had an undivided interest in 3,985.2 acres of land out of the Haskell county school land held in the name of Ed. F. Mann, which he surrendered by entering into the enterprise with Henry. This right was held under the trustee's sale made by Haskell county. This interest is fully set out in cause No. 1860, Ed. F. Mann v. White, 236 S. W. 783, this day handed down. Pershing suffered judgment against him by default in that case in favor of Mann to enable Mann to convey to Henry the 2,952 acres. Part of the consideration for this conveyance was that Henry should protect Pershing, and as held by this court in the above case:

"The effect of this agreement of June, 1918, between Pershing and Henry, was that any previous claim they might have against the land would be satisfied as between them by division in the proportion agreed upon."

Henry availed himself of that agreement in paying for the land obtained from Mann and in procuring a settlement which enabled him to obtain from Miller a deed to 5,722 acres. It is manifest the entire transaction, the agreement between the various parties, the deeds, the judgment, etc., will, as between Pershing and Henry, be considered as one transaction.

The failure to furnish evidence as to the sale attacked was not the sole consideration. Just what is meant by furnishing testimony the record does not explain. It does not seem to have been contemplated that appellant himself should testify to the things rendering the sale illegal. It seems to us the interpretation to be placed on the testimony is that he should furnish the names of the witnesses by whom the facts could be established. One of the witnesses was not in court; two others, the former county judge and county attorney, it appears at the trial at Lubbock, were acting as attorneys for Miller and Mann. There is nothing to show what they would have testified if placed on the witness stand, and nothing to show that the deposition of either was sought or taken. The appellant did not agree to pay the expense of furnishing the testimony; that seems to have been Henry's part of the undertaking. He is not shown to have endeavored to obtain the evidence by paying the expenses. The information furnished by appellant is not claimed to have been false and for that reason Henry repudiated the contract; but, on the contrary, the record shows they prosecuted the enterprise to a successful termination. They and their attorneys evidently knew, if they set aside the trustee's sale by Haskell county and bought in by it, that this would give neither Henry nor Pershing a title to any portion of the land. All it would have done, the title possibly would be left in Hoover and their lien as a second lien might have been enforced. If the debt of the county was not paid, the county could have sold the land and eliminated the claims of Henry and Pershing, unless they had paid the debt of the county. Certainly Henry did not repudiate the joint enterprise or partnership before he obtained in his name the land which they originally started out to procure. It is now too late for him to defeat the interests of the appellant by asserting he did not pay all he should have paid into the undertaking. Possibly that may be taken into consideration upon an accounting. Eakin v. Shumaker, 12 Tex. 51; Williams v. Pedersen, 47 Wash. 472, 92 Pac. 287, 17 L. R. A. (N. S.) 384.

In some parts of the testimony it seems

that the furnishing of the testimony to set aside the trustee's sale by Haskell county 'was made a condition to granting Pershing an interest in the land. If any such condition was ever made, it certainly was abandoned by Henry and not relied on by him at the time he made .the compromise at Lubbock and received the deeds of Mann and Miller to the land, as he testified on this trial that he recognized Pershing's rights and shortly thereafter, on April 12, he wrote a letter, expressly recognizing the agreement that had been entered into in Penry's office at Fort Worth, and that he would carry it out. Not only has Pershing verbally established the interest found by the jury, but he has the unqualified admission in writing made by Henry, recognizing that he has the interest and that he holds it in trust under that agreement made at Fort Worth. The jury do not find that furnishing the testimony was a condition necessary to the establishment of Pershing's interest in the land; they simply find that that was part of his undertaking, and that he did not furnish the testimony. Whether he did or not, it is manifest that the joint action of Pershing and Henry in causing Groos to institute the suit and prosecute it caused Mann and Miller to compromise that suit. Evidently sufficient had been ascertained to frighten them into a compromise and deed the land which Pershing now holds by virtue of their joint undertaking, and it would be inequitable, after having obtained that land and after having induced Pershing to surrender his one-third interest in the land held by Mann, 3,985 acres, and after he had permitted judgment to be taken against him for that interest, and after Henry has admitted repeatedly that he still recognized that agreement, to now hold that because some particular evidence was not furnished at that trial he should be defeated of all interest in the land.

It is manifest from the undisputed testimony in this case that the contract between Henry and Pershing constituted a joint undertaking to acquire land out of the Haskell county land and to share in the enterprise in the proprotion of $11/50$ to Pershing and $39/50$ to Henry, in whatever land was so secured or the proceeds derived therefrom. Crutcher v. Sligar, 224 S. W. 227; Schultz v. Scott, 210 S. W. 830. The jury find that Henry and Pershing agreed that all expenses of the proposed litigation would first be paid before a division had between them, and that it was the understanding that any division was to be out of the net proceeds of land recovered by their joint undertaking at the ratio of 11 to 39. It is not controverted, and Henry does not deny, that he took the deed in his name, subject to the terms of the agreement, for the joint enterprise. This being so, the interest of the parties is charged with the expenses of the enterprise under the terms of the agreement. Henry has no more power by virtue of the deed than had the joint owners. He cannot appropriate the entire estate to himself, nor deprive his joint associate of his interest. The original agreement did not contemplate Henry taking the title in his own name, and it seems at the compromise that he took the title in his name as a matter of convenience; but this did not empower him to say when the expenses should be paid, and if they were not paid by a sale of the land he was authorized to defeat Pershing out of everything, as decreed in the judgment in this case. As a joint enterprise, it was in the nature of a partnership for a certain specific purpose. The land when acquired belonged to them jointly in the proportion agreed upon, and, of course, whether agreed to or not, the expenses of the enterprise would be a charge upon the joint property, which must be paid before a dividend could be declared or a partition had. There is a distinction between a charge upon the land and a trust. In the case of the former the land is vested in the beneficiary for his beneficial enjoyment, subject, however, to the payment of a particular sum of money or the performance of a particular duty, while in a trust the conveyance or devise is limited to a particular purpose.

"If I give to A. and his heirs all my real estate, charged with my debts, that is a devise to him for a particular purpose, but not for that purpose only. If the devise is upon trust to pay my debts, that is devise for a particular purpose and nothing more; and the effect of those two modes admits just this difference; the former is the devise of an estate of inheritance for the purpose of giving the devisee the beneficial interest, subject to a particular purpose. The latter is a devise for a particular purpose, with no intention to give him any beneficial interest." Lang v. Everling, 3 Misc. Rep. 530, 23 N. Y. Supp. 329.

We think the beneficial interest by agreement upon acquiring the land was vested in the parties associated in the joint enterprise, charged with the expenses in so acquiring the land. The land was subject to the payment of those expenses, and the land or proceeds would be divided in the proportion agreed upon after the expenses are met or paid. The finding of the jury, we think, so states. This did not give one the interest in the entire land to the exclusion of the other, and evidently was not so intended. One could not hold and pay the expenses and sell and give the other only his portion of the proceeds. It did not give one to the exclusion of the other the power to wind up the enterprise at his discretion or on such terms as he should decide. Whether or not there could be a partition of the land between these parties, nevertheless there was a beneficial interest vested in both of them by the

acquisition of the property, and if one should attempt to appropriate the land to his own use, certainly the other would have the right to appeal to a court of equity to establish his interest and have a decree entered either partitioning the land or ordering its sale for the purpose of distribution, first paying the expenses and then dividing the proceeds. We think, however, by the verdict, the appellant had an $11/50$ interest in the land so acquired, charged with its part of the expenses. If a partition should be had, his interest should be charged with such sum and a lien given on it for the same, or Henry give sufficient land to compensate him for the advances made. Hanrick v. Gurley, 93 Tex. 458, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330; Kalteyer v. Wipff, 92 Tex. 673, 52 S. W. 63. The effect of the court's judgment in this case is to decree that the appellant had no interest. As seen from Henry's testimony and letter, he does not deny Pershing's interest, but admits it. True, he seems to think that right depends upon his discretion; in this we do not agree with him. We think he could be called upon for a settlement, and a refusal justified a suit to enforce the partition or the establishment of Pershing's interest and an accounting, and the court, having acquired jurisdiction, could settle all rights and equities. Moore v. Moore, 89 Tex. 29, 33 S. W. 217.

[3] In addition to this, Henry has placed on the land a mortgage with power of sale to secure an individual indebtedness of $39,-500. A trustee is required to act with absolute and most scrupulous good faith in dealing with the interest of a beneficiary.

"It is equally imperative upon the trustee in his dealings with trust property not to use it in his own private business, not to make any incidental profits for himself in its management, and not to acquire any pecuniary gain from his fiduciary position. The beneficiary is entitled to claim all advantage actually gained and to hold the trustee chargeable for all loss in any way happening from a violation of his duty." 3 Pomeroy's Equity Jurisprudence, § 1075 et seq.

[4] We are unable to determine in this case whether the mortgage has placed the property beyond the reach of appellant. This, of course, will depend upon the question in some measure as to whether the mortgagee had notice or acted in good faith. If it is beyond the reach of appellant, he is entitled to recover the value of the property. Boothe v. Fiest, 80 Tex. 141, 15 S. W. 799; McCord v. Nabours, 101 Tex. 499, 109 S. W. 913, 111 S. W. 144; Richardson v. Hutchins, 68 Tex. 81, 3 S. W. 276. We regard the execution of the mortgage as a breach of trust, and the trustee incurs a personal liability at the election of the beneficiary. 3 Pomeroy, Equity Jurisprudence, § 1080.

We think, under the findings of the jury and the admission of Henry, that appellant had an $11/50$ interest in the land acquired from Miller, mentioned in the deed from Miller to Henry; that he acquired an $11/50$ interest in the proceeds of the sale of the 2,952 acres acquired from Mann and sold to White, as shown in that case, after the payment of the debts named in the contract between Mann and Henry, the expenses of that litigation, and the damages which were adjudged against Henry in favor of White for failure to turn over possession of the land. It is evident from the court's judgment that he did not consider the value of the land or the expenses which had been paid by Henry in obtaining the land, or, in other words, did not go into an accounting between Pershing and Henry in the trial court, and we would not be justified in rendering judgment for the value of the land as found by the jury, as requested by appellant in this case. It is manifest the equities between these parties must first be adjusted before a final decree could be made as to the amount that should be paid to each party, but we do believe the trial court should have entered a judgment decreeing to Pershing an $11/50$ interest in the land obtained from Miller, charged with the expenses under their agreement, as found by the jury, and that he should have given a judgment for $11/50$ of the proceeds of the sale to White, after deducting the amounts of money necessary to pay for the same, as found in the Mann-White Case, and the expenses necessarily incident to such acquisition and the suit to establish the rights of the parties. It will be the order of this court that the judgment be so reformed, and to enter judgment for Pershing for such interest as above stated, and that the case be remanded to the trial court for an accounting and an adjustment of the equities between Pershing and Henry unsettled.

The judgment will therefore be reformed, and the cause remanded for an accounting and adjustment of the equities.